TERRY M. HENRY
Assistant Branch Director
JULIA A. BERMAN, (Cal. Bar No. 241415)
Trial Attorney
    Federal Programs Branch
    U.S. Department of Justice, Civil Division
    20 Massachusetts Ave., N.W., # 5102
    Washington, D.C.  20530
    Telephone: (202) 616-8480/Fax: (202) 307-0442
    E-mail:  julia.berman@usdoj.gov
EILEEN M. DECKER
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
ROBYN-MARIE LYON MONTELEONE
Assistant United States Attorney
Chief, General Civil Section, Civil Division
MARSHA M. YASUDA (Cal. Bar No. 238509)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-6702/Fax: (213) 894-7819
    E-mail: Marsha.Yasuda@usdoj.gov
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MARK BOAL, et al.<br>       Plaintiffs,<br><br>      v.<br><br>UNITED STATES OF AMERICA, et al.<br>      Defendants. | No. CV 16-05407 GHK (GJSx)<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE**<br><br>Honorable George H. King |

## **TABLE OF CONTENTS**

BACKGROUND ..................................................................................................2

    I.     The Nature of Courts-Martial ....................................................2

    II.    Factual Background ...................................................................3

DISCUSSION ....................................................................................................5

    I.     The Court Should Decline to Intercede in Independent Proceedings
          Before a Coordinate Court.........................................................5

         A.    Considerations Favoring Exhaustion of Remedies and Respect
              for the Coordinate Court System Require Abstention Absent
              Extraordinary Circumstances ...........................................6

             1.  Case Law Requiring Deference to Courts-Martial ..............6

             2.  Case Law Requiring Deference to Coordinate Courts,
                 Even as to Constitutional Claims Asserted by Civilians ......8

         B.    Under the Principles Articulated by the Supreme Court
              and the Court of Appeals, Deference to the Court-Martial
              is Required Here...............................................................9

             1.  Requiring Plaintiffs to seek relief from
                 the subpoena from the issuing court would
                 work no cognizable harm on Plaintiffs...............................10

             2.  Congress has established a robust court-martial system,
                 integrated with independent judicial review, that is
                 fully capable of vindicating the Plaintiffs' rights ...............12

             3.  Resolving the merits of Plaintiffs' objection to
                 the court-martial subpoena would require this Court
                 to address issues that Congress has entrusted in the
                 first instance to the expertise of the military courts.. ..........13

         C.    Against the Weight of Extensive Authority Requiring
              Abstention, Plaintiffs Cite No Case in which a Court
              Has Granted the Extraordinary Relief They Seek Here................15

i

II.   No Applicable Waiver of Sovereign Immunity Exists
      and the Court Therefore Lacks Jurisdiction.. ...........................................16

      A.   No statutory waiver applies to Plaintiffs' claims...........................16

      B.   Plaintiffs are not entitled to nonstatutory review...........................19

III.  Plaintiffs Have Not Demonstrated that They Are Entitled to a
      Temporary Restraining Order, or to any Injunctive Relief. ....................23

CONCLUSION .........................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alli v. United States,*
    2016 WL 1322427 (D. Md. Apr. 1, 2016) ................................................. 15

*Am. Trucking Ass'ns v. City of L.A.,*
    559 F.3d 1046 (9th Cir. 2009) ..................................................................... 23

*Ass'n of Nw. Steelheaders, etc. v. U.S. Army Corps of Eng'rs,*
    485 F.2d 67 (9th Cir. 1973) .................................................................... 20, 22

*Barron v. Reich,*
    13 F.3d 1370 (9th Cir. 1994) ........................................................................ 24

*Brannum v. Lake,*
    311 F.3d 1127 (D.C. Cir. 2002) ..................................................................... 8

*Branzburg v. Hayes,*
    408 U.S. 665 (1972) ...................................................................................... 22

*Brown v. Ahern,*
    676 F.3d 899 (9th Cir. 2012) .................................................................... 9, 11

*California ex rel. Cal. Dep't of Fish & Game. v. Quechan Tribe of Indians,*
    595 F.2d 1153 (9th Cir. 1979) ...................................................................... 17

*Carden v. Montana,*
    626 F.2d 82 (9th Cir. 1980) ...................................................................... 9, 11

*Chappell v. Wallace,*
    462 U.S. 296 (1983) ........................................................................................ 2

*Ctr. for Constitutional Rights v. Lind,*
    954 F. Supp. 2d 389 (D. Md. 2013) .............................................................. 15

*Dalton v. Specter,*
    511 U.S. 462 (1994) ...................................................................................... 19

*Dep't of the Army v. Blue Fox,*
    525 U.S. 255 (1999) ...................................................................................... 16

*Downen v. Warner*,
   481 F.2d 642 (9th Cir. 1973) ............................................................ 12, 15

*Dugan v. Rank*,
   372 U.S. 609 (1963) ........................................................ 19, 20, 21, 22

*EEOC v. Peabody W. Coal Co.*,
   610 F.3d 1070 (9th Cir. 2010) ............................................................ 19

*Farr v. Pitchess*,
   522 F.2d 464 (9th Cir. 1975) .............................................................. 22

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ............................................................................ 24

*Great Lakes Dredge & Dock Co. v. Huffman*,
   319 U.S. 293 (1943) .............................................................................. 5

*Guerrero v. Clinton*,
   157 F.3d 1190 (9th Cir. 1998) ............................................................ 24

*Hajro v. U.S.C.I.S.*,
   811 F.3d 1086 (9th Cir. 2016) ............................................................ 16

*Hamdan v. Rumsfeld*,
   548 U.S. 557 (2006) ............................................................................ 10

*Heckler v. Ringer*,
   466 U.S. 602 (1984) ............................................................................ 24

*Hennis v. Hemlick*,
   666 F.3d 270 (4th Cir. 2012) ................................................................ 3

*In re Cheney*,
   406 F.3d 723 (D.C. Cir. 2005) ........................................................... 24

*In re Grand Jury Proceedings (Scarce)*,
   5 F.3d 397 (9th Cir. 1993) .................................................................. 22

iv

*In re Grand Jury Subpoena*, *Judith Miller*,
  438 F.3d 1141 (D.C. Cir. 2005) ............................................................. 22

*In re Grand Jury Subpoenas*,
  438 F. Supp. 2d 1111 (N.D. Cal. 2006) ................................................. 22

*Larson v. Dom. & Foreign Commerce Corp.*,
  337 U.S. 682 (1949) ............................................... 19, 20, 21, 22

*Lawrence v. McCarthy*,
  344 F.3d 467 (5th Cir. 2003) ............................................................. 3

*Mashiri v. Dep't of Educ.*,
  724 F.3d 1028 (9th Cir. 2013) ..................................................... 20, 21

*McDonough v. Windall*,
  891 F. Supp. 1439 (D. Colo. 1995) ................................................. 16

*McKinney v. Caldera*,
  141 F. Supp. 2d 25 (D.D.C. 2001) ............................................... 17, 18

*Mississippi v. Johnson*,
  71 U.S. 475 (1866) ...................................................................... 24

*N. Side Lumber Co. v. Block*,
  753 F.2d 1482 (9th Cir. 1985) ......................................................... 17

*N.Y. Times Co. v. Gonzales*,
  382 F. Supp. 2d 457 (S.D.N.Y. 2005) ........................................... 15

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) ..................................................... 24

*Nixon v. Fitzgerald*,
  457 U.S. 731 (1982) ...................................................................... 24

*Noyd v. Bond*,
  395 U.S. 683 (1969) ............................................................ *passim*

*Rockefeller v. Bingaman,*
    234 F. App'x 852 (10th Cir. 2007) ........................................................................ 17

*Salazar v. Buono,*
    559 U.S. 700 (2010) ........................................................................ 5

*Samuels v. Mackell,*
    401 U.S. 66 (1971)........................................................................9, 11

*Schlesinger v. Councilman,*
    420 U.S. 738 (1975) ........................................................................ *passim*

*Shermoen v. United States,*
    982 F.2d 1312 (9th Cir. 1992) ........................................................................ 20

*Shoen v. Shoen,*
    48 F.3d 412 (9th Cir. 1995) ........................................................................ 14

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
    240 F.3d 832 (9th Cir. 2001) ........................................................................ 23

*Swan v. Clinton,*
    100 F.3d 973 (D.C. Cir. 1996) ........................................................................ 17, 24

*Tashima v. Admin. Office of U.S. Courts,*
    719 F. Supp. 881 (C.D. Cal. 1989) ........................................................................ 19

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006) ........................................................................ 17

*United States v. Denedo,*
    556 U.S. 904 (2009) ........................................................................ 3

*United States v. Mitchell,*
    463 U.S. 206 (1983) ........................................................................ 16

*United States v. Wuterich,*
    67 M.J. 63 (C.A.A.F. 2008) ........................................................................ 2, 12, 13

*United States v. Zolin*,
  491 U.S. 554 (1989) ................................................... 11

*Washington v. Udall*,
  417 F.2d 1310 (9th Cir. 1969) ..................................... 20

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ..................................................... 5

*Winter v. Nat. Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ....................................................... 23

*Younger v. Harris*,
  401 U.S. 37 (1971) ............................................ 9, 10, 11

**U.S. Constitution**
U.S. Const. art. I, § 8, cl. 14............................................ 2

**Statutes**
5 U.S.C. § 701 ...................................................... 17, 18
5 U.S.C. § 702 ................................................ 16, 17, 19
10 U.S.C. § 846........................................................ 8, 12
10 U.S.C. § 847............................................................. 3
10 U.S.C. § 885........................................................ 4, 14
10 U.S.C. § 899........................................................ 4, 14
28 U.S.C. § 1259........................................................ 3, 13
28 U.S.C. § 1651 .................................................. 3, 13, 24

**Other Authorities**
CAAF Rules of Practice and Procedure, Rule 4....................3
R.C.M. 101 ...............................................................2
R.C.M. 102 ...............................................................2
R.C.M. 703 ........................................................2, 8, 12, 13
U.S. Army Ct. of Crim. App., Internal Rules of Practice and Procedure, Rule 2 ............3

Defendants respectfully submit this opposition to Plaintiffs' Ex Parte Application for Temporary Restraining Order and for Order to Show Cause Why Defendants Should Not be Preliminarily Enjoined from Issuing and/or Enforcing a Subpoena to Plaintiffs ("Plaintiffs' Application" or "Pls' App."), ECF No. 9.

The relief that Plaintiffs seek in this case is not just extraordinary; to the Defendants' knowledge, it is also unprecedented. Plaintiffs ask this Court to intercede in the process of an independent, coordinate court—a military court-martial—and to enjoin that court from issuing or enforcing a subpoena even before that court has had the opportunity to consider Plaintiffs' objections to such process in the first instance. Defendants are not aware of a court that has so intruded into court-martial proceedings before, and Plaintiffs identify no reason why this Court should be the first to do so now.

Indeed, the principles articulated in *Schlesinger v. Councilman*, 420 U.S. 738 (1975), and other related principles of comity-based abstention, require the Court to stay its hand so that Plaintiffs may present their objection to the court-martial. That court is obligated—just like federal and state courts—to protect individuals' constitutional rights, and it was designed by Congress to do so. That forum would additionally provide the benefit of application of the military court's expertise regarding the issues raised in the Plaintiffs' Application, including the necessity of the information sought for use in the court-martial. It may also address fully Plaintiffs' complaints, or, at a minimum, narrow the issues to be adjudicated by the federal court. For these reasons and in light of principles of comity requiring deference to an independent court system, legion cases addressing the interaction of federal courts with military and state court systems require abstention in circumstances like those presented here.

Moreover, even if abstention were not required, sovereign immunity would bar the Plaintiffs' claims. Although it is black letter law that the Government is not subject to suit without its consent, Plaintiffs have identified no applicable waiver of sovereign immunity. Without an applicable waiver, the Court lacks subject matter jurisdiction to address the Plaintiffs' claims. For this reason, and for the additional reasons explained

1

below, Plaintiffs cannot establish a likelihood of success on their claims, or otherwise make the showing required to obtain the extraordinary relief that they seek.

## BACKGROUND

### I.    The Nature of Courts-Martial

The Constitution grants to Congress the authority "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8, cl. 14. Congress has "exercised its plenary constitutional authority over the military . . . and has established a comprehensive internal system of justice to regulate military life." *Chappell v. Wallace*, 462 U.S. 296, 302 (1983).

The Rules for Courts-Martial (R.C.M.) "govern the procedures and punishments in all courts-martial and, whenever expressly provided, preliminary, supplementary, and appellate procedures and activities." R.C.M. 101.  They are "intended to provide for the just determination of every proceeding relating to trial by court-martial," R.C.M. 102(a), and must be construed "to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay," R.C.M. 102(b).  R.C.M.703 (e)(2) empowers courts-martial to issue subpoenas to "civilian witnesses," and specifies that "[a] subpoena may be issued by the . . . trial counsel . . . to secure witnesses or evidence for that court-martial."  If the recipient of a subpoena "requests relief on grounds that compliance with the subpoena or order of production is unreasonable or oppressive," the military judge "may direct that the subpoena or order of production be withdrawn or modified."  R.C.M. 703(f)(4)(C).  A military judge also may order that information subject to a subpoena be submitted *in camera* to determine whether relief from production should be granted.  *Id.*; *see also United States v. Wuterich*, 67 M.J. 63, 78–79 (C.A.A.F. 2008) (abuse of discretion for court-martial to quash a subpoena without review, *in camera*, of the requested material).  If a subpoena recipient chooses not to comply with a subpoena, the court-martial may issue a warrant of attachment, but only upon certain findings, including that the recipient's information is "material," *see* R.C.M. 703(e)(2)(G)(ii).  Noncompliance with a subpoena also may be the subject of

2

criminal prosecution by the Department of Justice in civilian court.  *See* 10 U.S.C. § 847.

A decision by a military judge in subpoena proceedings may be reviewed by an appellate court created by Congress to serve that function.  *See Councilman*, 420 U.S. at 746 (noting that Congress has never "conferred on any Art. III court jurisdiction directly to review court-martial determinations").  In addition to the Army Court of Criminal Appeals, an intermediate appellate court comprised of servicemembers, Congress created the U.S. Court of Appeals for the Armed Forces (CAAF), the highest court in the military judicial system, "consist[ing] of civilian judges free from military influence." *Lawrence v. McCarthy*, 344 F.3d 467, 473 (5th Cir. 2003).  Those military appellate courts may consider, *inter alia*, petitions for extraordinary relief under the All Writs Act, 28 U.S.C. § 1651.[1]  Additionally, 28 U.S.C. § 1259 provides that following review by the Court of Appeals for the Armed Forces, the Supreme Court has discretion to review certain cases, including those in which the Court of Appeals for the Armed Forces has granted relief.  28 U.S.C. § 1259(4).

Despite the differences between the military and civilian court systems, the "courts of the military justice system are just as obligated to protect [the individual's] constitutional rights as state and federal courts." *Hennis v. Hemlick*, 666 F.3d 270, 278 (4th Cir. 2012); *see also, e.g.*, *United States v. Denedo*, 556 U.S. 904, 917 (2009) (military courts "must . . . ensure the neutrality and integrity of their judgments").

## II.    Factual Background

On June 30, 2009, Sergeant Bowe Bergdahl left Observation Post Mest, Afghanistan.[2]  *See* Decl. of Maj. Justin C. Oshana (Aug. 4, 2016), Ex. A hereto, at ¶ 2. He was returned to the control of the United States on May 31, 2014.  *Id.* ¶ 3.  The United States Army conducted two administrative fact-finding investigations under

---

[1] *See* U.S. Army Ct. of Crim. App., Internal Rules of Practice and Procedure, Rule 2(b); CAAF Rules of Practice and Procedure, Rule 4(b).

[2] Bergdahl was a Private First Class (PFC) at the time of his departure.  Oshana Decl. ¶ 2.

3

governing Army procedures into his disappearance; the first investigation was completed in 2009, the second completed in 2014. *Id.* ¶ 4.

Sometime following 2014, Plaintiff Mark Boal telephonically interviewed Sergeant Bergdahl "regarding his disappearance from an Army outpost in Afghanistan" and recorded those interviews. *See* Decl. of Mark Boal ¶¶ 6–8. Those interviews included, for example, discussion of Sergeant Bergdahl's intent in leaving Observation Post Mest on June 30, 2009. *See* Decl. of J.P. Jassy ¶ 4. Mr. Boal used excerpts of those interviews in a popular podcast that has been broadcast to the public. Boal Decl. ¶ 8.

On March 25, 2015, charges for violations of the Uniform Code of Military Justice ("UCMJ") were preferred against Sergeant Bergdahl. Oshana Decl. ¶ 5. The charges include desertion with intent to avoid hazardous duty or shirk important service in violation of Article 85, UCMJ, and misbehavior before the enemy in violation of Article 99, UCMJ. *Id.* at ¶ 8. In relevant part, Article 85 provides that [a]ny member of the armed forces who . . . quits his unit, organization, or place of duty with intent to avoid hazardous duty or to shirk important service . . . is guilty of desertion." 10 U.S.C. § 885. Article 99 provides that:

> Any member of the armed forces who before or in the presence of the enemy. . . (2) shamefully abandons, surrenders, or delivers up any command, unit, place, or military property which it is his duty to defend; [or] (3) through disobedience, neglect, or intentional misconduct endangers the safety of any such command, unit, place, or military property . . . shall be punished by death or such other punishment as a court-martial may direct.

10 U.S.C. § 899. The charges against Sergeant Bergdahl were referred by the General Court-Martial Convening Authority, General Robert B. Abrams, to a general court-martial on December 14, 2015. Oshana Decl. ¶ 6. Trial is scheduled for February 6–17, 2017, and motions hearings are scheduled for August 22–24, 2016; September 28–30, 2016; October 26, 2016; December 1–2, 2016; and December 16, 2016. *Id.* at ¶ 7.

The judge advocate assigned as Trial Counsel to timely prosecute Sergeant Bergdahl's case is Major Justin Oshana. *Id.* at ¶ 1. While preparing for the court-

martial, Major Oshana determined that unaired audio recordings of the above-referenced interviews contained information he believed to be relevant and necessary to prosecution of Sergeant Bergdahl's court-martial. *Id.* at ¶ 10. To that end Major Oshana reached out to Plaintiffs' counsel. *Id.* From approximately March 31, 2016, to approximately July 20, 2016, he attempted to reach an agreement with Plaintiffs' counsel regarding the production of those recordings. *Id.* Major Oshana agreed multiple times to delay issuance of the contemplated subpoena to allow Mr. Boal the opportunity to discuss the matter and possible resolutions with his counsel. *Id.* at ¶ 11. Major Oshana ultimately agreed to delay issuance of the subpoena until July 22, 2016. *Id.*

On July 20, 2016, Plaintiffs filed the Complaint. *See* ECF No. 1. On July 21, 2016, following a conversation between their counsel and Major Oshana, Plaintiffs filed their Ex Parte Application, *see* ECF No. 9. On July 25, 2016, the parties stipulated that the subpoena will not issue until after the Court's resolution of the Plaintiffs' Application.[3] *See* ECF Nos. 14, 17.

## DISCUSSION

### I.   The Court Should Decline to Intercede in Independent Proceedings Before a Coordinate Court.

Plaintiffs ask this Court to exercise its equitable powers to enjoin the issuance and enforcement of the contemplated subpoena. *See Salazar v. Buono*, 559 U.S. 700, 714 (2010) ("An injunction is an exercise of a court's equitable authority, to be ordered only after taking into account all of the circumstances that bear on the need for prospective relief.").[4] Consistent with the principles of comity articulated in numerous cases

---

[3] Defendants remain open to working with the Plaintiffs regarding the scope of the contemplated subpoena to reach an accommodation that is acceptable to all parties. Oshana Decl. ¶ 13.

[4] Under the Declaratory Judgment Act, too, the court "[is] as free as in any other suit in equity to grant or withhold the relief prayed, upon equitable grounds." *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943); *see also, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (recognizing the discretionary nature of declaratory relief).

addressing the interaction of federal and coordinate court systems, however, this Court should abstain from exercising its equitable jurisdiction in this case.  The question of equitable jurisdiction is concerned "not with whether the claim falls within the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its remedial powers." *Councilman*, 420 U.S. at 754.  The Supreme Court and the Court of Appeals have each addressed this question when they were asked to intercede in military courts-martial and in state court proceedings.  Although the settings were different, the answer was the same:  where a party is lawfully subject to process from a coordinate court, a federal court, absent extraordinary circumstances, may not exercise its equitable jurisdiction to intervene until the coordinate court has had the opportunity to address the party's grievance.  The principles guiding those decisions apply in equal measure to the situation before this Court; this Court should decline to intervene in the pending court-martial, and allow that court to consider the Plaintiffs' request in the first instance.

> ### A. Considerations Favoring Exhaustion of Remedies and Respect for the Coordinate Court System Require Abstention Absent Extraordinary Circumstances.
>
> #### 1. Case Law Requiring Deference to Courts-Martial

In *Schlesinger v. Councilman*, a case in which the Supreme Court reversed a decision by a federal court to intervene in pending court-martial proceedings, the Court highlighted "strong considerations favoring exhaustion of remedies" and respect for "the integrity of [the] military court process[]." *Id.* at 761.  With respect to the first consideration, the Court emphasized that whether the court-martial would convict the petitioner, and whether a military court would uphold the appeal, were matters "entirely of conjecture." *Id.* at 754.  The Court explained that a requirement of exhaustion of remedies—analogous to that applicable in administrative law—serves multiple purposes such as allowing agencies "to correct their own errors," noting that "[t]he rule ensures that [whether] judicial review is available will be informed and narrowed by the agencies' own decisions." *Id.* at 756.  Indeed, the Court observed that "often the

1    agency's ultimate decision will obviate the need for judicial intervention." *Id.* at 756-57.

2    Additionally, the Court emphasized that it must respect "the congressional

3    judgment" that "the military court system generally is adequate to and responsibly will

4    perform its assigned task." *Id.* at 758; *see also Noyd v. Bond*, 395 U.S. 683, 694 (1969)

5    ("The tribunal whose judgment is challenged may be adequate for the occasion.  If it is,

6    any friction between the federal court and the military or state tribunal is saved.").

7    Although the Court discussed the military's specialized laws and traditions, *see*

8    *Councilman*, 420 U.S. at 757–58, it also analogized to situations in which federal courts

9    were asked to intervene in state proceedings.  S*ee id.* at 755–56.  In such situations, in

10   addition to federalism, "considerations of comity" and "the necessity of respect for

11   coordinate judicial systems" supported the general requirement that state court remedies

12   be exhausted before collateral federal relief could be sought:  "federal courts are not at

13   liberty to assume that the decision of the state court would be otherwise than is required

14   by the fundamental law of the land." *Id.*[5] Similarly, respect for courts-martial as a

15   coordinate court system—one "carefully designed [and] . . . established by Congress,"

16   *id.* at 753— "counsel[ed] strongly against the exercise of equity power." *Id.* at 757.

17   The Court in *Councilman* required abstention in that setting notwithstanding that

18   the petitioner argued that he would sustain "great and irreparable damage in that he

19   might be deprived of his liberty without due process of law."  420 U.S. at 754.   In

20   declining to intervene before the court-martial could complete its proceedings, the Court

21   concluded that he "was threatened with no injury other than that incidental to every

22   criminal proceeding brought lawfully and in good faith."  *Id.*  Such injury could not

23   outweigh "the deference that should be accorded the judgments" of the courts-martial.

24   *Id.* at 753; *see also Noyd*, 395 U.S. at 695 (declining to "have civilian courts intervene

25

26   ───────────────

     ⁵ Indeed, the Court noted that "[t]he precise content of constitutional rights almost

27   invariably turns on the context of fact and law in which they arise," and reasoned "[s]tate

     courts are quite as capable as federal courts of determining the facts, and they alone can

28   define and interpret state law." *Councilman*, 420 U.S. at 755.

precipitately into military life without the guidance of the court to which Congress has confided primary responsibility for the supervision of military justice in this country"). In sum, the Court concluded that "the balance of factors governing exercise of equitable jurisdiction by federal courts normally weighs against intervention, by injunction or otherwise, in pending court-martial proceedings." *Councilman*, 420 U.S. at 740.

### 2. Case Law Requiring Deference to Coordinate Courts, Even as to Constitutional Claims Asserted by Civilians

Plaintiffs suggest that the cases counseling abstention do not apply to civilians asserting constitutional rights. *See* Pls' App., Ex. 1 ("Pls' Mem.") at 8. That is not the law. In support of their argument, Plaintiffs cite a footnote in *Noyd v. Bond* in which the Court collected cases where abstention was not warranted because "the Constitution barred the assertion of court-martial jurisdiction over various classes of civilians connected with the military." 395 U.S. at 696 n.8. In other words, those cases addressed the claims of civilians "who raised substantial arguments denying the right of the military to try them at all," which rendered it "especially unfair to require exhaustion of military remedies."[6]  *Id.* No such jurisdictional arguments are at issue here.[7] The issuance of a subpoena to a civilian is squarely within the jurisdiction of the court-martial, *see* R.C.M. 703(e)(2)(C); *see* 10 U.S.C. § 846(c) (addressing court martial subpoena process), as is the power to consider the civilian's motion to quash that subpoena, *see* RCM 703(f)(4)(C), and Plaintiffs do not argue otherwise. In such settings, where jurisdiction is not in doubt, federal courts require civilians and servicemembers alike to seek relief from the coordinate court absent extraordinary

---

[6] Likewise, in *Brannum v. Lake*, 311 F.3d 1127 (D.C. Cir. 2002), another case on which Plaintiffs rely, *see* Pls' Mot. at 7, the D.C. Circuit declined to consider any claims except those regarding "whether the military had jurisdiction over [the plaintiff] . . . in the first place." *Id.* at 1129; *see also id.* at 1131 (affirming dismissal of all "non-jurisdictional claims").

[7] For the reasons explained in Section I.B.3, the *Noyd* Court's conclusion that "the expertise of the military courts" did not extend "to the consideration of constitutional claims of the type presented" also has no application here.

1    circumstances.

2         Indeed, in cases where civilians subject to prosecution in state court seek the

3    intercession of federal courts in pending state proceedings, federal courts routinely

4    require abstention even as to civilians' claims that the prosecutions violate their First

5    Amendment rights.  *See, e.g.*, *Younger v. Harris*, 401 U.S. 37, 50 (1971); *Samuels v.*

6    *Mackell*, 401U.S. 66, 75–76 (1971).  The Court of Appeals recently reaffirmed that

7    principle in *Brown v. Ahern*, 676 F.3d 899 (9th Cir. 2012), declining to intercede in a

8    pending state prosecution that the petitioner contended violated his constitutional right to

9    a speedy trial.  The Court emphasized that "*Younger* established the rule that

10   fundamental principles of comity and federalism prohibit the federal courts from

11   enjoining ongoing state proceedings except under extraordinary circumstances."  676

12   F.3d at 900; *see Carden v. Montana*, 626 F.2d 82, 83 (9th Cir. 1980).  The Court further

13   observed that "extraordinary circumstances" encompass "only cases of proven

14   harassment or prosecutions undertaken by state officials in bad faith without hope of

15   obtaining a valid conviction, or where irreparable injury can be shown."  *Brown*, 676

16   F.3d at 901.  The case law further makes clear that "irreparable injury" is a high

17   standard; neither the chilling of free speech, nor even the claimed violation of a right to a

18   speedy trial, were sufficient to warrant federal intervention in ongoing state proceedings.

19   *See, e.g.*, *Brown*, 676 F.3d at 901; *Younger*, 401 U.S. at 45–46; *Samuels*, 401 U.S. at 69.

20        **B.    Under the Principles Articulated by the Supreme Court and the**
                **Court of Appeals, Deference to the Court-Martial is Required Here.**
21

22        The precedent discussed above teaches that three factors should inform this

23   Court's determination of whether to exercise its equitable jurisdiction in this case.  As a

24   threshold matter, the Court should consider whether Plaintiffs can show "great and

25   irreparable damage," that is, damage other "than that attendant to resolution of [this] case

26   in the military court system," *Councilman*, 420 U.S. at 754, 758, if the court-martial is

27   permitted to consider Plaintiffs' objection to a subpoena in the first instance.  Next, the

28   Court should examine whether the challenged proceeding is taking place within an

                                        9

"integrated system of military courts and review procedures" that can protect the Plaintiffs' constitutional rights, including by allowing for review by "civilian judges completely removed from all military influence or persuasion."  *Id.* at 758; *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 586–87 (2009) (declining to apply *Councilman* deference to military commissions that, among other things, lacked the avenues for civilian review provided in courts-martial).  Finally, the Court should consider whether the issues raised by Plaintiffs' motion are "matters as to which the expertise of military courts is singularly relevant, and their judgments indispensable to inform any eventual review in Art. III courts."  *Councilman*, 420 U.S. at 760.  All three of these factors strongly favor abstention in this case.

### 1. Requiring Plaintiffs to seek relief from the subpoena from the issuing court would work no cognizable harm on Plaintiffs.

Plaintiffs here offer little explanation of what harm they would sustain if they were required to challenge the subpoena in the court-martial in the first instance.  They allude to the burden on Mr. Boal's time and resources and the geographic location of the military court.  *See* Pls' Mem. at 25.  But the Supreme Court has rejected a similar argument by a habeas petitioner seeking to vindicate his liberty interests.  *See Noyd*, 395 U.S. at 696–97.  There, the petitioner argued that the physical distance between him and the military court created "practical difficulty" that justified his seeking relief from a civilian court.  *Id.* at 697.  The Court observed that "[i]ndividuals convicted of crime . . . are often obliged to appeal to state courts which are far distant from the place at which they are incarcerated," and that this "has never been considered sufficient" to excuse a petitioner from exhausting state court remedies.  *Id.*[8]  The Court concluded that "[s]ince petitioner has at no time attempted to show that prompt and effective relief was unavailable from the [military court] in his case, . . . petitioner's failure to exhaust this

---

[8] *See also Councilman*, 420 U.S. at 755 ("the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution [cannot] by themselves be considered 'irreparable'") (quoting *Younger*, 401 U.S. at 46).

remedy before seeking the assistance of the civilian courts is not excused."  *Id.* at 698.  Here, too, Plaintiffs have made no showing regarding why the court-martial could not provide them "prompt and effective relief," *id.*, if given the opportunity to consider this issue.  They are threatened with no injury "other than that incidental to every . . . proceeding brought lawfully and in good faith."  *Councilman*, 420 U.S. at 754.[9]

To be sure, Plaintiffs seek this Court's intercession to address important First Amendment interests.  But equally important were the liberty interest of the petitioners in *Councilman*, 420 U.S. at 754, and *Noyd*, 395 U.S. at 687; the First Amendment interests of the petitioners in *Younger*, 401 U.S. at 38–39, and *Samuels*, 401 U.S. at 67; and the Sixth Amendment interests of the petitioners in *Brown*, 676 F.3d at 900, and *Carden*, 626 F.2d at 83.[10]  In each of those cases, the federal courts declined to intervene, holding that the coordinate systems, whether military or state, were capable of—and, indeed, entitled to—address the petitioners' arguments in the first instance.  *See Councilman*, 420 U.S. at 761; *Noyd*, 395 U.S. at 698; *Younger*, 401 U.S. at 54; *Samuels*, 401 U.S. at 73–74; *Brown*, 676 F.3d at 903; *Carden*, 626 F.2d at 84–85.  In that respect, the present case is no different.

---

[9] Even if *in camera* review were ordered in this case to assist the court-martial in its assessment of Plaintiffs' objection to the contemplated subpoena, such review would work no cognizable injury on Plaintiffs.  The Supreme Court "has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection . . . and the practice is well established in the federal courts."  *United States v. Zolin*, 491 U.S. 554, 569 (1989) (citation omitted).

[10] In *Younger*, First Amendment harms alleged by individuals not subject to the prosecution at issue did not alter the Court's assessment that abstention was required.  *See* 401 U.S. at 39–40 (describing allegations by professor and political activists that the pending prosecution chilled their own activities).  Similarly, the allegations of *amici* here, *see* ECF No. 20-1 at 3–8, 16, do not change the analysis; the factors discussed above require abstention in deference to the coordinate court.

### 2. Congress has established a robust court-martial system, integrated with independent judicial review, that is fully capable of vindicating the Plaintiffs' rights.

In support of their argument that this Court should intercede to hear their constitutional claim, Plaintiffs rely on *Downen v. Warner*, 481 F.2d 642 (9th Cir. 1973), and other cases in which federal courts have declined to require a party to take a constitutional claim "to an administrative board." *See* Pls' Mot. at 6 (quoting *Downen*, 481 F.2d at 643); *see also id.* 6–7 n.2. In highlighting these cases' holdings that constitutional issues are "singularly suited to a judicial forum," *see, e.g.*, *id.* at 6 (quoting *Downen*, 481 F.2d at 643), Plaintiffs misunderstand the nature of courts-martial.

As the Supreme Court explained in *Councilman*, a court-martial *is* a judicial forum. *See* 420 U.S. at 757–59. With the Uniform Code of Military Justice, "Congress created an integrated system of military courts and review procedures, a critical element of which is the Court of Military Appeals consisting of civilian judges completely removed from all military influence or persuasion."[11] *Id.* at 758. Indeed, the military court system specifically includes provisions for the issuance of subpoenas to civilians, *see* R.C.M.703(e)(2), and requires that "[p]rocess issued in court-martial cases . . . to compel the production of . . . evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue." 10 U.S.C. § 846(c). Thus, the court-martial system also provides mechanisms for recipients of subpoenas to challenge that process if it is "unreasonable or oppressive," and "the military judge may direct that the subpoena or order of production be withdrawn or modified." *See* R.C.M. 703(f)(4)(C); *see also, e.g.*, *Wuterich*, 67 M.J. at 64 (review of order of court-martial quashing subpoena requesting recording from media organization).[12]

---

[11] In 1994, Congress gave the Court its current designation, the "United States Court of Appeals for the Armed Forces." *See About the Court*, C.A.A.F., *available at* http://www.armfor.uscourts.gov/newcaaf/about.htm.

[12] Furthermore, although a court martial may issue a warrant if a subpoena recipient does not comply with a subpoena, the issuance of a warrant is conditioned on the military judge concluding, among other things, that the information at issue is

*(footnote cont'd on next page)*

Of course, it is uncertain whether the court-martial would withdraw or modify a subpoena such as that at issue here, should it issue.  In *United States v. Wuterich*, the Court of Appeals for the Armed Forces noted that it has not been resolved "whether a newsgathering privilege applies in the military justice system."  67 M.J. at 79.  Whether or not a privilege did apply, issues such as the materiality of the information to the proceeding could be relevant considerations regarding a decision whether to quash or modify a subpoena.  *See infra* Section I.B.3.  In any event, if the Plaintiffs were not satisfied with the court-martial decision on a motion to quash a subpoena, they would have at least the opportunity to petition the Army Court of Criminal Appeals and the U.S. Court of Appeals for the Armed Forces, an appellate court consisting of civilians, for extraordinary relief.  As discussed above, those appellate courts, *inter alia*, have jurisdiction to consider petitions for extraordinary relief under the All Writs Act, 28 U.S.C. § 1651.  *See supra* p.3.  Following review by the Court of Appeals for the Armed Forces, Plaintiffs also would have the opportunity to petition the Supreme Court on *certiorari* for relief if the case fell within the provisions of 28 U.S.C. § 1259.

As the Supreme Court observed, "implicit in the Congressional scheme embodied in the [UCMJ] is the view that the military court system generally is adequate to and responsibly will perform its assigned task."  *Councilman*, 420 U.S. at 757.  In sum, then, the military court-martial is a court—one to which deference "should be accorded," *id.* at 753—and cases addressing administrative review boards simply have no application here.

### 3. Resolving the merits of Plaintiffs' objection to the court-martial subpoena would require this Court to address issues that Congress has entrusted in the first instance to the expertise of the military courts.

Plaintiffs argue that "[t]he District Court, not a military tribunal, has the expertise to assess whether the Defendants' [s]ubpoena violates Boal's rights under the First

---

"material."  *See* R.C.M. 703(e)(2)(G)(ii).  Thus, even that avenue involves oversight by the military judge based on the particulars of the court-martial proceeding.

1    Amendment and, separately, the common law." Pls.' Mem. at 8. But Plaintiffs ignore

2    that, even according to their Application, an assessment of whether a qualified reporters'

3    privilege applies to the materials at issue would require a court to determine whether the

4    requested materials are "noncumulative" and "clearly relevant to an important issue" in

5    the court-martial. *See* Pls' Mem. at 13 (quoting *Shoen v. Shoen*, 48 F.3d 412, 416 (9th

6    Cir. 1995)).[13] Thus, for a court, such as this Court, to apply that standard, it would need

7    to understand the elements of the offenses with which Sergeant Bergdahl is charged, the

8    relative importance of the subpoenaed information to the charges, and the rules of

9    evidence that govern court-martial proceedings; and although, as discussed above, both

10   the court-martial and this Court are expert in constitutional issues and obligated to

11   protect individual rights, the court-martial is uniquely qualified to address these military-

12   specific matters.

13       Here, the offenses at issue are unique to the military setting. For example, the

14   court-martial could apply its expertise to determine what measure of proof is necessary

15   to establish "intent to avoid hazardous duty or to shirk important service," 10 U.S.C. §

16   885, and the importance of proffering such proof relative to the other elements of the

17   offense. Likewise, the elements of misbehavior in the presence of the enemy include

18   proof of "disobedience, neglect, or intentional misconduct," in certain uniquely military

19   circumstances, s*ee* 10 U.S.C.A. § 899, and would require the expertise of the court-

20   martial. As to both offenses, the court-martial's specialized knowledge would allow it to

21   assess, for example, the importance of the material sought by the contemplated

22   subpoena—including, for example Sergeant Bergdahl's discussion of his intent in

23   leaving Observation Post Mest—in establishing the elements the prosecution would be

24   required to prove in those proceedings.

25       Because the unique knowledge of the military court will be key in resolving

26   whether the requested evidence is "noncumulative" and "clearly relevant to an important

27       [13] Respondents do not concede the accuracy of plaintiffs' assertion regarding the
applicable standard. *See infra* n.23.

28

14

issue" in the court-martial (at least under the standard argued by Plaintiffs), this factor, too, favors abstention by this Court. *See Councilman*, 420 U.S. at 760.

### C. Against the Weight of Extensive Authority Requiring Abstention, Plaintiffs Cite No Case in which a Court Has Granted the Extraordinary Relief They Seek Here.

With the exception of cases in which civilians tried by court-martial challenged the very jurisdiction of the military courts to hear charges against them, *see supra* pp. 8–9, none of the cases that Plaintiffs cite presents a situation in which a federal court intervened in ongoing court-martial proceedings. *See* Pls' Mem. at 5–8.[14]  In the sole instance of which Defendants are aware when a district court took such a step, the district court did so after the court-martial had considered the issue, and the Court of Appeals for the Armed Forces had held that it did not have jurisdiction to order the relief sought (the disclosure of documents from a pending court-martial).  *See Ctr for Constitutional Rights v. Lind*, 954 F. Supp. 2d 389, 392–94 (D. Md. 2013).  That, of course, is not the situation before the Court now.

Rather, this case more closely resembles that before the court in *Alli v. United States*, 2016 WL 1322427 (D. Md. Apr. 1, 2016), in which a defendant in a court-martial proceeding asked the district court to quash a subpoena that the court-martial had issued to his bank.  In declining to intercede, the court cited both a statute at issue in the case and "the deference owed to a military court in the midst of conducting a court-martial." *Id.* at *8.  The same reasoning reflected in the latter point applies in equal measure here: Plaintiffs have identified no reason why this Court should disregard the respect due a

---

[14] Rather, some cases do not involve the intercession by a federal court in the coordinate military court system at all, *see e.g., N.Y. Times v. Gonzales*, 382 F. Supp. 2d 457 (S.D.N.Y. 2005), *vacated and remanded* in 2006, (addressing process issued by a federal court), while others do not involve a situation in which there is a pending court-martial proceeding, *see e.g.*, *Downen*, 481 F.2d 642.  These sets of cases are not instructive regarding the instant case, since they implicate neither the comity nor the exhaustion of remedies considerations that counsel in favor of abstention here.

coordinate court established by Congress, and render a decision regarding a matter the court-martial has not considered in the first instance.[15]

## II.   No Applicable Waiver of Sovereign Immunity Exists and the Court Therefore Lacks Jurisdiction.

Even if the Court were not to abstain from considering the Plaintiffs' claims based on comity, sovereign immunity would bar the relief that Plaintiffs request here.  It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Thus, plaintiffs seeking to invoke the jurisdiction of the federal courts in a suit against the Government must identify an applicable waiver of sovereign immunity.  *Hajro v. U.S.C.I.S.*, 811 F.3d 1086, 1101 (9th Cir. 2015).

### A.   No statutory waiver applies to Plaintiffs' claims.

When plaintiffs rely on a statutory waiver of sovereign immunity, that waiver must be "unequivocally expressed."  *Id.*  This is a "high standard," and "[t]he Supreme Court has frequently cautioned against finding implied waivers of sovereign immunity."  *Id.*  Furthermore, if a statute waives sovereign immunity, but places limitations upon that waiver, the waiver must be "strictly construed" in favor of the United States.  *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999).

Here, Plaintiffs are silent as to sovereign immunity, but refer, without comment, to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, in the section of the Complaint addressing "Jurisdiction & Venue."  *See* Compl. ¶ 6.  Based on that reference,

---

[15] *McDonough v. Windall*, 891 F. Supp. 1439 (D. Colo. 1995), also cited by the Plaintiffs, *see* Pls' Mem. at 7 n. 2, further demonstrates that the court-martial should be permitted to address Plaintiffs' arguments because that may "obviate the need for [federal] judicial intervention."  *Councilman*, 420 U.S. at 756–57.  In *McDonough*, before the federal court had issued relief, the military had voluntarily addressed the plaintiff's grievance.  891 F. Supp. at 1450.  As a result, the court concluded it "should stay [its] hand . . . in deference to considerations of comity for a coordinate branch of government."  *Id. See also, e.g., Noyd*, 395 U.S. at 693–94 ("If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any interference by the federal court may be wholly needless.").

16

1   it appears Plaintiffs intend to rely on Section 702's statutory waiver of sovereign

2   immunity.[16]  On its face, however, that statute excludes Plaintiffs' claims.

3           In relevant part, Section 702 provides:

4           An action in a court of the United States seeking relief other than money
            damages and stating a claim that an agency or an officer or employee
5           thereof acted or failed to act in an official capacity or under color of legal
            authority shall not be dismissed nor relief therein be denied on the ground
6           that it is against the United States.

7

8   5 U.S.C. § 702.  By its terms, this provision waives sovereign immunity only as to "an

9   agency" or an officer or employee thereof.  *Id.*; *see, e.g., Trudeau v. Federal Trade*

10  *Comm'n*, 456 F.3d 178, 187 (D.C. Cir. 2006) (Section 702 "refer[s] to a claim against an

11  'agency' and hence waives immunity only when the defendant falls within that

12  category").  The preceding section of the APA specifies that "an agency" does not

13  include "courts martial."  5 U.S.C. § 701(b)(1)(F).[17]  The APA, therefore, does not

14  provide a waiver of sovereign immunity for actions against courts-martial.

15          Moreover, a claim need not be brought against a court-martial expressly to be

16  excluded by 5 U.S.C. § 701(b)(1)(F).  In *McKinney v. Caldera*, 141 F. Supp. 2d 25

17  (D.D.C. 2001), the court relying, in part, on this exclusion, held that APA claims against

18  the Secretary of the Army and the Judge Advocate General could not proceed.  The

19  plaintiff in that case sought to challenge a decision by the Judge Advocate General not to

20
            [16] The other statues that Plaintiffs enumerate contain no waivers of sovereign
21  immunity.  *See, e.g.*, *N. Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 (9th Cir. 1985)
22  (28 U.S.C. § 1331 contains no waiver of sovereign immunity); *State of Calif. ex rel. Cal.
    Dep't of Fish and Game. v. Quechan Tribe of Indians*, 595 F.2d 1153, 1155 (9th Cir.
23  1979) (28 U.S.C. §§ 2201–2202 does not waive sovereign immunity); *Swan v. Clinton*,
24  100 F.3d 973, 981 (D.C. Cir. 1996) ("Neither the general federal question statute nor the
    mandamus statute by itself waives sovereign immunity").
25
            [17] *Cf. Rockefeller v. Bingaman*, 234 F. App'x 852, 856 (10th Cir. 2007)
26  (sovereign immunity barred suit against former members of Congress because Congress
27  is excluded from the definition of "agency" in §701(b)(1) and, thus, "the waiver of
    sovereign immunity contained in § 702 [did] not apply").
28

                                          17

allow a post-trial hearing in court-martial proceedings.  The court concluded that the Judge Advocate General's office was not an "agency" under the APA, and highlighted its role in court martial proceedings, which the APA specifically excluded from review. *Id.* at 34.  The court reasoned that a decision allowing review in that case "would fundamentally alter the relationship between the civilian and military courts, and would, in essence, defy the presumption against civilian-court review of military-court decisions." *Id.*  Importantly, the court did not separately assess the same claims against the Secretary of the Army; its focus was on the substance of the claims asserted, which sought to interject the civilian court into the court-martial process.[18]

Plaintiffs' action here likewise is essentially a claim against the court-martial. Nominally, Plaintiffs bring their claims against multiple defendants.  In substance, however, Plaintiffs' pleadings make plain that the sole focus of this action is the court-martial, and, in particular, preventing the court-martial and those alleged to be involved in it from issuing a subpoena to Plaintiffs or from enforcing that subpoena.  *See, e.g.*, Compl. ¶¶ 1–5.  Plaintiffs' descriptions of the Defendants refer to them only in relation to that court-martial process; Plaintiffs allege that:  the United States and the President are included because "the subpoena will issue from 'the President of the United States,'" *id.* at ¶ 10; the Secretary of Defense and Secretary of the Army are included because they are "responsible for the actions of [the Judge Advocate who would subscribe the subpoena]," *id.* ¶¶ 11–12; the General Court-Martial Convening Authority is included because he is "the official who referred the charges against Bergdahl to a court-martial and is responsible for the investigation, referral, and conduct of the court-martial," *id.* ¶ 13; and the judge advocate serving as Trial Counsel in the court-martial is included because he "will subscribe the subpoena," *id.* ¶ 14.  All of these descriptions confirm

---

[18] Although the claims in *McKinney v. Caldera* were for statutory review under the APA, the court's analysis of Section 701(b)(1)(F) has application here because Section 701(b)(1), in addition to limiting [or "addressing"] the scope of APA review, also limits the sovereign immunity waiver effected by that statute. *See supra* n.17.

1   what is plain from the balance of the Complaint and the Plaintiffs' Application—the

2   focus of this action is Plaintiffs' request for this Court to prevent any officials associated

3   with the court-martial proceeding "from issuing or enforcing the threatened subpoena."

4   Because Congress unequivocally removed courts-martial from the APA's waiver of

5   sovereign immunity, Plaintiffs cannot look to the APA to authorize this action.[19]

6   ### B.    Plaintiffs are not entitled to nonstatutory review.

7        With no applicable waiver of sovereign immunity, Plaintiffs may attempt to

8   establish they are entitled to "nonstatutory" review under *Larson v. Domestic & Foreign*

9   *Commerce Corp.*, 337 U.S.682 (1949), and  *Dugan v. Rank*, 372 U.S. 609 (1963).[20]  The

10   *Larson-Dugan* doctrine provides that, notwithstanding the immunity of the sovereign

11   from suit, a claim may nonetheless be brought against a federal officer for actions that

12   are *ultra vires*, or in excess of that officer's statutory or constitutional authority, because

13   "his actions beyond those limitations are considered individual and not sovereign

14   actions."  *Larson*, 337 U.S. at 689; *see also Dugan*, 372 U.S. at 621–23.  Such cases are

15   permitted notwithstanding the Government's sovereign immunity because they are, in

16   effect, not suits against the Government, *see id.*; "[i]n such cases the relief can be

17   granted . . . only because of the officer's lack of delegated power."  *Id.* at 689–90.  For

18   this reason, claims that an officer exercised his delegated power wrongfully will not pass

19   muster; the doctrine is limited to permitting review of "action by officers beyond their

---

[19] Furthermore, "the President is not an agency" under the APA.  *Dalton v. Specter*, 511 U.S. 462, 470 (1994).  Thus, even if there were otherwise a statutory waiver of sovereign immunity with respect to Plaintiffs' court-martial claims, it would not extend to those claims asserted against the President.

[20] There is some question as to the continued viability of the *Larson-Dugan* doctrine.  The Ninth Circuit has explained that "after § 702 was amended in 1976, it replaced the [prior] fiction as the doctrinal basis for a claim for prospective relief." *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1085 (9th Cir. 2010); *but see Tashima v. Admin. Office of the U.S. Courts*, 719 F. Supp. 881, 887 (C.D. Cal. 1989) (relying on *Dugan*, finding no immunity where respondents had "exceed[ed] constitutional limits), *aff'd on other grounds*, 967 F.2d 1264 (9th Cir. 1992).

statutory powers" and situations in which "the powers themselves or the manner in which they are exercised are constitutionally void." *Dugan*, 372 U.S. at 621–22.

Furthermore, even where a claim satisfies the test described above, "when the relief sought would work an intolerable burden on governmental functions, outweighing any consideration of private harm, the action must fail notwithstanding allegations falling within the recognized exceptions to sovereign immunity." *Ass'n of Nw. Steelheaders v. U.S. Army Corps of Eng'rs*, 485 F.2d 67, 69 (9th Cir. 1973).  Although this exception is rooted in the Supreme Court's statement that claims seeking "affirmative action by the sovereign or the disposition of unquestionably sovereign property" would be barred by sovereign immunity, *see State of Wash. v. Udall*, 417 F.2d 1310, 1318 (9th Cir. 1969) (citing *Larson*, 337 U.S. at 691 n. 11), *superseded by statute on other grounds as stated in Mashiri v. Dep't of Educ.*, 724 F.3d 1028 (9th Cir. 2013), the Ninth Circuit has indicated that even claims for injunctive relief requiring the Government to cease activity or for declaratory relief may be barred if the relief would work an "intolerable burden." *See Shermoen v. United States*, 982 F.2d 1312, 1320 (9th Cir. 1992).  For example, in *Shermoen* the Ninth Circuit held that sovereign immunity prevented joinder of officers of the tribal council, notwithstanding that they were alleged to have been acting based on an unconstitutional statute, because the declaratory relief sought in that action "would work an intolerable burden on governmental functions." *Id.*; *see also Ass'n of Nw. Steelheaders*, 485 F.2d at 70 (remanding to the trial court for its determination of "whether *each* prayer of relief," including requests to enjoin further construction of a dam and a declaration as to the meaning and application of a statute, "would constitute such an intolerable burden").

Here, it is far from clear that any of Plaintiffs' claims in this case would fit within the *Larson-Dugan* framework in the first instance.  To the extent any did, they would nonetheless be excluded by Ninth Circuit's exception barring actions that would create an intolerable burden on governmental functions, as discussed below.

As a threshold matter, it is evident that several categories of claims would not pass

muster under the *Larson-Dugan* test.  No claims against the United States could proceed, since the very premise of the doctrine is that claims may be brought to the extent they are *not* against the sovereign.  Nor could claims against any defendant grounded in what the Plaintiffs term "the common law" and "Department of Justice guidelines for the issuance of subpoenas to reporters and state protections for reporters."[21]  Compl. ¶ 4.  Such theories would all fall outside of the *Larson-Dugan* doctrine, which, as discussed above, permits suits based only on actions that are beyond the statutory or constitutional power of the officer against whom relief is sought.

So, too, with most of the remaining claims grounded in the First Amendment and asserted against the President, the Secretary of Defense, the Secretary of the Army, the Convening Authority, and the judge advocate who would subscribe the contemplated subpoena.  Even if the relief sought were available against the President,[22] neither the President, nor the Secretary of Defense, nor the Secretary of the Army, is alleged to have taken any *ultra vires* action on which application of the *Larson-Dugan* doctrine could be based.  In the absence of such an action, there is no basis for jurisdiction, since the premise of the doctrine is that a court can grant relief against an officer, individually, for *actions* that were not authorized by the sovereign.  As to the remaining claims—the First Amendment claims asserted against the General Court-Martial Convening Authority, and the judge advocate who would subscribe the subpoena—the doctrine would permit such claims only if the issuance of the subpoena were found to be unconstitutional.  *See, e.g.*, *Mashiri*, 724 F.3d at 1032 ("the question of whether the Larson–Dugan exception applied merged with the question on the merits") (quotation omitted).  Even based on case law that Plaintiffs cite in support of their argument, *see* Pls.' Mem. at 7–8, however,

---

[21] *See also* 28 C.F.R. 50.10(j) (Dep't of Justice guidelines regarding subpoenas to reporters) ("This policy is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.").

[22] *See* Section III, *infra*, explaining why such relief is not available.

21

1  such an outcome is uncertain at best.[23]

2       Furthermore, to the extent any of Plaintiffs' claims fell within the *Larson-Dugan*

3  framework, they would be barred because the relief sought would create "an intolerable

4  burden on governmental functions, outweighing any consideration of private harm."

5  *Ass'n of Nw. Steelheaders*, 485 F.2d at 69.  As discussed in Section I above, Plaintiffs

6  here seek unprecedented intercession into the process of an independent, coordinate

7  court before that court has had an opportunity even to consider the issue in the first

8  instance.  Granting the requested relief would work an intolerable burden by infringing

---

[23] Plaintiffs' reliance on *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141 (D.C. Cir. 2006), is puzzling.  Pls.' Mot. at 7–8.  There, the court rejected a claim that "the First Amendment affords journalists a constitutional right to conceal their confidential sources even against the subpoenas of grand juries."  *Id.* at 1144.  Citing *Branzburg v. Hayes*, 408 U.S. 665 (1972), the D.C. Circuit explained that each petitioner in that case "claimed . . . the protection of a First Amendment reporter's privilege."  438 F.3d at 1146.  But "[t]he Supreme Court in no uncertain terms rejected the existence of such a [constitutional] privilege."  *Id.*  Indeed, the D.C. Circuit "[found] no grounds for relief under the First Amendment, due process clause, or Department of Justice guidelines, and [was] persuaded that any common law privilege that exists would be overcome in [that] case."  *Id.*  at 1145.

It is far from clear that Ninth Circuit case law would warrant a different result. The case law on which Plaintiffs rely is largely from the civil context, *see* Pls' Mem. at 9–17, and the privilege functions differently in civil and criminal settings.  *See, e.g., In re Grand Jury Proceedings (Scarce)*, 5 F.3d 397, 400 (9th Cir. 1993) (highlighting the Supreme Court's holding that "news gatherers are not exempt from the duty imposed on any other citizen to 'respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial.'") (quoting *Branzburg*, 408 U.S. at 690–91); *cf. Farr v. Pitches*, 522 F.2d 464, 469 (9th Cir. 1975) (journalist seeking habeas relief "was not constitutionally protected in his refusal to identify those who violated the proper order of the [criminal] court.").  In *In re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111, 1115–18 (N.D. Cal. 2006), the court held that the First Amendment qualified reporters' privilege applies to protect information in criminal cases only where the request for information is for an investigation "not conducted in good faith," "not involve[ing] a legitimate need of law enforcement," or "ha[ving] only a remote and tenuous relationship to the subject of the investigation."  *Id.* (quoting *Scarce*, 5 F.3d at 401).  The court also held that "even if a federal common law reporter's privilege existed," the Government upon a proper showing could "overcome…any such privilege."  *Id.* at 1115.

on the independence and function of that court.  Considerations of comity and respect for independent judicial processes have led courts to abstain from action even where an injury to individuals' liberty interests was alleged.  *See* Section I.  Here, on the other hand, if this Court declined to grant relief, Plaintiffs would need only to reassert their arguments before the court-martial.  If, at the conclusion of those proceedings, they felt their rights were not sufficiently addressed, they would have recourse to appellate-type review, *see supra* pp. 3 and 13, or, ultimately, to return to this Court in due course, if appropriate, after exhausting their remedies in the court-martial system.  Such procedural steps—seeking relief in due course through the channels that Congress intended—cannot outweigh the impermissible incursion on sovereign immunity that would be wrought by the relief that Plaintiffs seek.

### III.  Plaintiffs Have Not Demonstrated that They Are Entitled to a Temporary Restraining Order, or to any Injunctive Relief.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Resources Defense Council*, 555 U.S. 7, 22 (2008)).  A party seeking a preliminary injunction or temporary restraining order "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Am. Trucking Assn's, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir.2009).[24] Plaintiffs here can establish none of these factors.

To begin with, Plaintiffs cannot establish a likelihood of success because the law requires that the Court decline equitable jurisdiction in this case.  *See* Section I.  Moreover, even if abstention were not required, sovereign immunity bars the Plaintiffs' claims, *see* Section II, and the possibility of relief from the court-martial renders

---

[24] Identical standards apply to temporary restraining orders and preliminary injunctions.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001).

1   mandamus—even if it were not barred by sovereign immunity—plainly unavailable.[25]

2   In any event, any relief against the President also is not available because the Supreme

3   Court has made clear that an injunction or mandamus action against the President could

4   lie, if at all, only in very limited circumstances, and that any such relief would be

5   extraordinary.  *Franklin*, 505 U.S. at 802–03 (relying on *Mississippi v. Johnson*, 71 U.S.

6   (4 Wall.) 475, 498–99 (1867), for the proposition that "in general" the courts have "no

7   jurisdiction of a bill to enjoin the President in the performance of his official duties");

8   *see also Franklin*, 505 U.S. at 826 (Scalia, J. concurring) ("no court has authority to

9   direct the President to take an official act"); *Nixon v. Fitzgerald*, 457 U.S. 731, 750

10  (1982) ("[t]he President's unique status under the Constitution distinguishes him from

11  other executive officials"); *Guerrero v. Clinton*, 157 F.3d 1190, 1191 n.2 (9th Cir. 1998)

12  ("mandamus against the President would be 'extraordinary'") (quoting *Franklin*, 505

13  U.S. at 802).  These same concerns apply to actions for declaratory relief.  *See Newdow*

14  *v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010) (noting that "[a] court—whether via

15  injunctive or declaratory relief—does not sit in judgment of a President's executive

16  decisions"); *Swan*, 100 F.3d at 977 n.1 ("[S]imilar considerations regarding a court's

17  power to issue relief against the President himself apply to [a] request for a declaratory

18  judgment.").  No such extraordinary circumstances apply here.  *See*, *e.g.*, *supra* at 21–22.

19  _____

20      [25] Mandamus constitutes "drastic" relief, which is patently unavailable here.  *In re*

21  *Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).  Although Plaintiffs' Application refers in

22  passing to their request for mandamus relief under 28 U.S.C. § 1651(a), *see* Pls.' Mem.

23  at 3–4, Plaintiffs say little about this claim.  *See* Pls' Mem., generally.  In fact, the writ of

24  mandamus "is intended to provide a remedy for a plaintiff *only if he has exhausted all*

25  *other avenues of relief*."  *Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (emphasis added).

26  It is "appropriately issued only when (1) the plaintiff's claim is clear and certain; (2) the

27  defendant official's duty to act is ministerial, and so plainly prescribed as to be free from

28  doubt; and (3) no other adequate remedy is available." *Barron v. Reich*, 13 F.3d 1370,
    1374 (9th Cir.1994).  None of these conditions obtain in this case, particularly as
    Plaintiffs have made no attempt to secure relief from the court—the court martial—
    under the authority of which the process to which they object would issue.

Thus, for this additional reason, Plaintiffs' claims against the President should be rejected as a matter of law.

Not only can Plaintiffs not demonstrate a likelihood of success, as discussed in Section I.B.1 above Plaintiffs can demonstrate no hardship from presenting their arguments to the court-martial beyond that attendant to ordinary litigation. The Supreme Court and the Court of Appeals have repeatedly judged such allegations to be insufficient to justify disrupting the process of a coordinate court. Their judgments regarding the balance of the equities and the public interest also apply in equal measure to this case. As in *Councilman*, there is nothing here "that outweighs the strong considerations favoring exhaustion of remedies or that warrants intruding on the integrity of military court processes." 420 U.S. at 761.

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court deny the Plaintiffs' Application.

Dated: August 5, 2016

TERRY M. HENRY
Assistant Branch Director

*/s/ Julia A. Berman*
JULIA A. BERMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

EILEEN M. DECKER
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
ROBYN-MARIE LYON MONTELEONE
Assistant United States Attorney
Chief, General Civil Section, Civil Division

*/s/ Marsha M. Yasuda*
MARSHA M. YASUDA
Assistant United States Attorney

*Attorneys for Defendants*

25