JEAN-PAUL JASSY, Cal. Bar No. 205513
   jpjassy@jassyvick.com
KEVIN L. VICK, Cal. Bar No. 220738
   kvick@jassyvick.com
**JASSY VICK CAROLAN LLP**
6605 Hollywood Boulevard, Suite 100
Los Angeles, California 90028
Telephone:  310-870-7048
Facsimile:   310-870-7010

Colby C. Vokey (admitted *pro hac vice*)
LtCol USMC (Ret.)
   vokeylaw@colbyvokey.com
6924 Spanky Branch Court
Dallas, Texas 75248
Telephone: 214-697-0274
Facsimile: 214-594-9034

Attorneys for Plaintiffs
MARK BOAL and FLAKJACKET LLC
d/b/a PAGE 1

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARK BOAL, an individual, FLAKJACKET LLC d/b/a PAGE 1, a California Limited Liability Company, | Case No.: 2:16-CV-05407-GHK-GJS |
| | Assigned to the Hon. George H. King |
| Plaintiffs, | **REPLY IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE PRELIMINARILY ENJOINED FROM ISSUING AND ENFORCING SUBPOENA; APPENDIX A** |
| v. | |
| UNITED STATES OF AMERICA; BARACK OBAMA, in his official capacity as President of the United States of America; ASHTON B. CARTER, in his official capacity as Secretary of Defense; ERIC FANNING, in his official capacity as Secretary of the Army; ROBERT B. ABRAMS, in his official capacity as General Court-Martial Convening Authority; JUSTIN OSHANA, in his official capacity as Major, Judge Advocate, US Army Trial Counsel, and DOES 1 THROUGH 10, inclusive, | [Filed Pursuant to Order on Briefing Schedule, Dkt. No. 17] |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  THE GOVERNMENT DOES NOT DISPUTE SUBJECT MATTER
JURISDICTION, VENUE OR RIPENESS ........................................ 3

    A.  This Court Has Subject Matter Jurisdiction ............................... 3

    B.  Venue Is Proper ........................................................................ 4

    C.  This Action Is Ripe ................................................................... 4

III.  THIS COURT SHOULD NOT ABSTAIN; IT SHOULD PROTECT
PLAINTIFFS' CONSTITUTIONAL RIGHTS HERE AND NOW ................. 5

    A.  This Court Has The Authority To Give Boal The Relief He Seeks ........ 5

    B.  The *Councilman* Abstention Doctrine Does Not Apply Because
Boal Is A Civilian With Constitutional Claims, And It Would Be
"Especially Unfair" To Require Him To Exhaust His Remedies In
Military Court .................................................................................... 7

IV.  DEFENDANTS ARE NOT ENTITLED TO SOVEREIGN IMMUNITY ...... 15

    A.  It Is Well-Established That Federal Officers Can Be Enjoined To
Prevent Ongoing And Future Infringements Of Federal Rights ............. 15

    B.  Sovereign Immunity Is Waived By 5 U.S.C. § 702 ............................. 17

    C.  No Exception To Section 702's Waiver Of Sovereign Immunity
Applies Because, *Inter Alia*, Plaintiffs' Claims Are Against
Federal Officers, And *Not* Against The Court-Martial (*i.e.,* The
Court) Itself ...................................................................................... 17

V.  PLAINTIFFS HAVE MADE THEIR SHOWING FOR A
TEMPORARY RESTRAINING ORDER OR OTHER INJUNCTIVE
RELIEF .............................................................................................. 20

    A.  Unrebutted Law And Evidence Demonstrate Irreparable Harm ........... 20

    B.  Defendants Do Not Defend The Indefensible Subpoena, And
Plaintiffs Are Likely To Succeed On The Merits ............................. 20

-i-

C.    The Balance Of Equities And Public Interest Favor Plaintiffs ............... 22

VI.   CONCLUSION ................................................................................... 25

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Alli v. United States*,
    2016 WL 1322427 (D. Md. Apr. 1, 2016) ................................................. 8

5

6

*Baker v. F&F Investment*,
    470 F.2d 778 (2d Cir. 1972) ................................................................ 23

7

8

*Bell v. Hood*,
    327 U.S. 678 (1946) ..................................................................... 6, 16

9

10

*Bigrow v Hiatt*,
    70 F.Supp. 826 (M.D. Pa. 1947), *aff'd,* 168 F.2d 992 (3d Cir. 1948) .................. 14

11

12

*Bowen v. Michigan Academy of Family Physicians*,
    476 U.S. 667 (1986) ................................................................ 17, 19

13

14

*Branzburg v. Hayes*,
    408 U.S. 665 (1972) ..................................................................... 21

15

16

*Chamber of Commerce v. Reich*,
    74 F.3d 1322 (D.C. Cir. 1996) ........................................................... 18

17

18

*Chappell v. Wallace*,
    462 U.S. 296 (1983) ...................................................................... 7

19

20

*Chula Vista Citizens for Jobs and Fair Competition v. Norris*,
    782 F.3d 520 (9th Cir. 2015) ..................................................... 2, 5, 13

21

22

*City of Houston v. Hill*,
    482 U.S. 451 (1987) ...................................................................... 5

23

*Compuware Corp. v. Moody's Inv's Servs., Inc.*,
    222 F.R.D. 124 (E.D. Mich. 2004) ....................................................... 12

24

25

*Cothran v. Dalton*,
    83 F.Supp.2d 58 (D.D.C. 1999) .......................................................... 19

26

27

*Culinary Workers Union, Local 226 v. Del Papa*,
    200 F.3d 614 (9th Cir. 1999) ............................................................. 5

28

-iii-

*DB By and Through Johnson v. Lippert*,
   2016 WL 381436 (Army Ct. Crim. App. Feb. 1, 2016) ........................................ 11

*Detroit Free Press v. Ashcroft*,
   195 F.Supp.2d 937 (E.D. Mich. 2002) ...................................................... 6, 7

*Dickey v. United States*,
   404 F.2d 882 (5th Cir. 1968) ............................................................... 14

*Doe v. Harris*,
   696 F.2d 109 (D.C. Cir. 1992) ...................................................... 6, 16, 19

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2014) ............................................................. 21

*Elrod v. Burns*,
   427 U.S. 347 (1976) ................................................................... 2, 20

*Farr v. Pitchess*,
   522 F.2d 464 (9th Cir. 1975) ....................................................... 11, 14, 21

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010) .................................................................. 12, 20

*In re Grand Jury Proceedings (Scarce)*,
   5 F.3d 397 (9th Cir. 1993) ................................................................ 21

*In re Grand Jury Subpoena, Judith Miller*,
   488 F.3d 1141 (D.C. Cir. 2006) ........................................................... 21

*In re Grand Jury Subpoenas*,
   438 F. Supp. 2d 1111 (N.D. Cal. 2006) .................................................... 21

*Hamdan v. Rumsfeld*,
   548 U.S. 557 (2006) ....................................................................... 7

*Larson v. Domestic & Foreign Commerce Corp.*,
   337 U.S. 682 (1949) ...................................................................... 15

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ............................................................. 20

*Lexmark, Int'l, Inc. v. Static Control Components, Inc.*,
   134 S.Ct. 1377 (2014) ................................................................ 14, 15

-iv-

*McDonough v. Widnall*,
    891 F.Supp. 1439 (D. Col. 1995) ................................................ 6, 16

*McElroy v. United States ex rel. Guagliardo*,
    361 U.S. 281 (1960) ................................................................. 8

*New York Times Co. v. Gonzales*,
    382 F.Supp.2d 457 (S.D.N.Y. 2005) .................................... 4, 23

*New York Times Co. v. Gonzales*,
    459 F.3d 160 (2d Cir. 2006) ......................................................... 4

*Newsom v. Norris*,
    888 F.2d 371 (6th Cir. 1989) ................................................... 20

*Noyd v. Bond*,
    395 U.S. 683 (1969) .......................................................... 8, 13

*O'Callahan v. Parker*,
    395 U.S. 258 (1969) ................................................................ 13

*Parker v. Levy*,
    417 U.S. 733 (1974) ..................................................... 1, 2, 13

*Philadelphia Co. v. Stimson*,
    223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912) ................... 15

*Porter v. Jones*,
    319 F.3d 483 (9th Cir. 2003) ..................................................... 5

*The Presbyterian Church (U.S.A.) v. U.S.*,
    870 F.2d 518 (9th Cir. 1989) ............................................ 17, 18

*R.I. Dept. of Envt'l Mgmt. v. United States*,
    304 F.3d 31 (1st Cir. 2002) .................................................. 6, 16

*Reid v. Covert*,
    354 U.S. 1 (1957) ..................................................................... 8

*Riley v. Chester*,
    612 F.2d 708 (3d Cir. 1979) .................................................... 21

*Schlesinger v. Councilman*,
    420 U.S. 738 (1975) ........................................................*passim*

*Schneider v. Smith*,
  390 U.S. 17, 88 S.Ct. 682, 19 L.Ed.2d 799 (1968) ................................. 15

*Shoen v. Shoen*,
  5 F.3d 1289 (9th Cir. 1993) (*Shoen I*) .................................9, 11, 23, 24

*Shoen v. Shoen*,
  48 F.3d 412 (9th Cir. 1995) (*Shoen II*) .......................................... 11, 22

*Simmat v. U.S. Bureau of Prisons*,
  413 F.3d 1225 (10th Cir. 2005) ....................................................... 18

*Singh v. Carter*,
  2016 WL 837924 (D.D.C. Mar. 3, 2016) ............................................ 8

*Solorio v. United States*,
  483 U.S. 435 (1987) ..................................................................... 14

*Sprint Communications, Inc. v. Jacobs*,
  134 S.Ct. 584 (2013).................................................................... 14

*Susan B. Anthony List v. Driehaus*,
  134 S.Ct. 2334 (2014) .....................................................2, 4, 14, 15

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996)........................................................ 22

*Tashima v. Admin. Office of the U.S. Courts*,
  719 F. Supp. 881 (C.D. Cal. 1989)................................................... 16

*Toth v. Quarles*,
  350 U.S. 11 (1955) ........................................................................ 8

*United States v. Fields*,
  663 F.2d 880 (9th Cir. 1981) ......................................................... 22

*United States v. Gutierrez*,
  11 M.J. 122 (CMA 1981) ............................................................... 10

*United States v. Minor*,
  228 F.3d 352 (4th Cir. 2000)........................................................ 5, 6

*United States v. Morros*,
  268 F.3d 695 (9th Cir. 2001) ........................................................... 3

REPLY I/S/O APPLICATION FOR TRO/OSC

*United States v. Murdock Mach. & Engr. Co.*,
   81 F.3d 922 (10th Cir. 1996) ................................................................ 18

*United States v. Pretzinger*,
   542 F.2d 517 (9th Cir. 1976) ......................................................... 11, 14

*United States v. Rodriguez*,
   60 M.J. 239 (CAAF 2004) ................................................................ 19

*United States v. Shafer*,
   384 F.Supp. 486 (N.D. Ohio 1974) .................................................... 10

*United States v. Wuterich*,
   67 M.J. 63 (CAAF 2008) ................................................................... 10

*United States v. Wuterich*,
   68 M.J. 511 (N-M Ct. Crim. App. 2009) ...................................... 10, 11

*Veterans for Common Sense v. Shinseki*,
   644 F.3d 845 (9th Cir. 2011) ............................................................. 18

*Warsoldier v. Woodford*,
   418 F.3d 989 (9th Cir. 2005) ............................................................. 20

*Webster v. Doe*,
   486 U.S. 592 (1988) .................................................................... 17, 19

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010) ............................................................. 5

*Younger v. Harris*,
   401 U.S. 37 (1971) ....................................................................... 9, 10

*Zerilli v. Smith*,
   656 F.2d 705 (D.C. Cir. 1981).......................................................... 24

*Zwickler v. Koota*,
   389 U.S. 241 (1967) ........................................................................... 5

**Constitutional Provisions**

U.S. Constitution, Article I, § 8 ................................................................ 7

U.S. Constitution, First Amendment ..............................................*passim*

-vii-

**Statutes**

5 U.S.C.
    § 701(b)(1)(B) ................................................................................. 19
    § 701(b)(1)(F) ............................................................................ 17, 19
    § 702 ................................................................................. 4, 17, 18, 19

10 U.S.C.
    § 38(a) ............................................................................................ 19
    § 846(a) .......................................................................................... 19
    § 847 ..................................................................................... 2, 12, 13
    § 847(b) ............................................................................... 10, 13, 14
    § 862 .............................................................................................. 11
    § 862(a)(1)(B) ............................................................................... 12
    § 866 .............................................................................................. 11
    § 866(a) .................................................................................... 10, 12
    § 866(b) ......................................................................................... 12

28 U.S.C.
    § 1259 ............................................................................................ 12
    §§ 1259(3), (4) .............................................................................. 12
    § 1331 .............................................................................. 3, 4, 6, 15
    § 1346(a)(2) ..................................................................................... 4
    § 1361 .............................................................................................. 4
    § 1391 .............................................................................................. 4
    § 1651(a) ................................................................................... 4, 11
    § 2283 .............................................................................................. 9

42 U.S.C. § 1983 ................................................................................... 15

**Other Authorities**

28 C.F.R. § 50.10 ................................................................................... 3

CAAF Rules of Practice & Procedure, Rule 4(b) ................................. 11

Ct. Crim. App., Rule 2(b) .................................................................... 11

Erwin Chemerinsky, Federal Jurisdiction, § 9.2.2 (3d ed. 1999) ................ 15

Rules for Courts-Martial (R.C.M.)
    103(8) ............................................................................................ 19
    103(14), (15) ................................................................................. 18
    703(c)(1) ........................................................................................ 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

703(e)(2)(C) ............................................................................................... 19
703(f)(2) ..................................................................................................... 19
809. ............................................................................................................ 13

**REPLY I/S/O APPLICATION FOR TRO/OSC**

# I.   INTRODUCTION

We are before this Court because a military prosecutor is threatening to subpoena a civilian, non-party journalist to produce unpublished and confidential materials – or else face incarceration.  Defendants cite no other case in American history where a military prosecutor has made such threats against an individual journalist.  It is entirely within the Government's power to make Mark Boal's request for relief disappear by simply withdrawing the threat of subpoena.  But, because the military prosecutor insists on proceeding with his threats, Boal needs this Court to protect his constitutional rights.

Boal never joined the Armed Forces.  He did not submit to the narrowed rights attendant to military life.  Although there is no dispute that Boal is a civilian and not a defendant in any court-martial, Defendants' opposition brief relies heavily on cases where members of the Armed Forces asked federal courts to enjoin court-martial proceedings in which they were criminally accused.  Boal is not asking this Court to stop the court-martial of Sgt. Bowe Bergdahl.  And, contrary to the Government's repeated and incorrect assertions, Boal is *not* asking this Court to enjoin another *court* or another judge from issuing or enforcing a subpoena.  The military court itself is not a defendant in this action, and, unlike a subpoena from this Court, a subpoena in a general court-martial issues from the prosecutor, not from or under the imprimatur of the court itself.  Consistent with established authority, Boal is asking this Court to enjoin a military prosecutor and his superior federal officers from acting unconstitutionally.

Boal and his company, Page 1, are residents of Los Angeles.  Under well-established Ninth Circuit authority, they have a First Amendment-based reporter's privilege to refuse to produce the wide swath of materials that the military prosecutor wants in this case.  There is presently no such clearly established right in the U.S. Army courts, which are more focused on maintaining norms of military order and discipline than safeguarding civilians' First Amendment rights.  *See Parker v. Levy*,

-1-

1   417 U.S. 733, 758 (1974).  Although Boal could try to convince an Army court-

2   martial to recognize the reporter's privilege, it is manifestly unfair that he should

3   have to do so.

4        Boal's constitutional rights are secure here.  He lives here.  Boal's ***unrebutted***

5   evidence and legal authority – supported by a coalition of 37 *amici curiae* – details

6   how the military prosecutor's mere threat of a subpoena is already causing irreparable

7   harm to his First Amendment right to gather and report newsworthy material and to

8   maintain his reputation as an independent and trustworthy reporter.  The

9   Government's suggestion that Boal litigate in a military court system that does not

10  clearly recognize his constitutional rights or guarantee timely or meaningful civilian

11  review is not acceptable.  It does not afford him adequate and prompt protection of

12  his constitutional rights the way this Court can and should.  *Susan B. Anthony List v.*

13  *Driehaus*, 134 S.Ct. 2334, 2347 (2014) ("a federal court's obligation to hear and

14  decide cases within its jurisdiction is virtually unflagging").

15       Not all military subpoenas to civilians involve constitutional rights.  This one

16  does.  If the Army court-martial were to decline to recognize the reporter's privilege

17  and command compliance with the threatened subpoena, and Boal were to refuse,

18  then we would be right back where we started with the U.S. Attorney ("USA")

19  prosecuting Boal for his refusal before *this* Court under 10 U.S.C. § 847.  In the

20  intervening months, Boal's ongoing irreparable harm would compound.  Boal Decl.,

21  ¶¶ 10-17; *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("[t]he loss off First Amendment

22  freedoms, for even minimal periods of time, unquestionably constitutes irreparable

23  injury").

24       Defendants ignore that "'abstention is ... the exception and not the rule,' and it

25  is ***strongly disfavored*** in First Amendment cases."  *Chula Vista Citizens for Jobs and*

26  *Fair Competition v. Norris*, 782 F.3d 520, 528 (9th Cir. 2015) (emphasis added).

27  And, despite the deference Defendants insist must be afforded the military justice

28  system, Congress concluded in 10 U.S.C. § 847 that only an Article III court could be

1   trusted to decide whether a civilian like Boal may be punished for refusing

2   compliance with a military subpoena.  That this Court would ultimately decide Boal's

3   fate, with months of irreparable harm to Boal's First Amendment rights in the

4   meantime, weighs strongly against abstention.  And, in order to enforce the subpoena,

5   the USA would need to follow stringent Department of Justice ("DOJ") guidelines for

6   subpoenaing and protecting reporters, 28 C.F.R. § 50.10, which the military

7   prosecutor here refuses to recognize.  After 23 pages of unavailing procedural

8   arguments, it is no wonder the DOJ attorneys' opposition brief makes no real effort to

9   defend the military prosecutor's subpoena.  It is indefensible.  Surely, the DOJ would

10   not permit a subpoena like that to originate from one of its offices.

11      Although Defendants invoke inapposite authority to urge abstention and the

12   application of sovereign immunity, they do not dispute that this Court has subject

13   matter jurisdiction, that venue is proper or that the constitutional issues in this case

14   are ripe for decision.  Nor do they defend the indefensible subpoena itself or seriously

15   contest that Boal is suffering and will continue to suffer irreparable harm without

16   relief from this Court.  For all of the reasons stated in their opening brief and below,

17   Plaintiffs respectfully urge this Court to protect Mark Boal's constitutional rights here

18   and now by restraining Defendants from issuing and/or enforcing the threatened

19   subpoena.

20   **II.    THE GOVERNMENT DOES NOT DISPUTE SUBJECT MATTER**

21   **        JURISDICTION, VENUE OR RIPENESS**

22   **        A. This Court Has Subject Matter Jurisdiction**

23      Defendants do not dispute that this Court has subject matter jurisdiction under

24   28 U.S.C. § 1331, as "district courts shall have original jurisdiction of all civil actions

25   arising under the Constitution, laws, or treaties of the United States."  *United States v.*

26   *Morros*, 268 F.3d 695, 699-700 (9th Cir. 2001) (when a complaint "seek[s] recovery

27   directly under the Constitution or laws of the United States, the federal court … must

28

1   entertain the suit").[1]  In *Schlesinger v. Councilman*, 420 U.S. 738 (1975), a case

2   relied on heavily by Defendants, the Court held that a federal district court had

3   subject matter jurisdiction under 28 U.S.C. § 1331 to hear a service-member's request

4   to enjoin his own court-martial proceedings.  *Id.* at 744-753.[2]  In another case, the

5   U.S. District Court for the Southern District of New York retained jurisdiction

6   pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2), in a newspaper's declaratory relief

7   action concerning subpoenas of two reporters' telephone records by a federal grand

8   jury in the Northern District of Illinois.  *New York Times Co. v. Gonzales*, 382

9   F.Supp.2d 457, 464, 475 (S.D.N.Y. 2005).[3]

10  **B. Venue Is Proper**

11  Defendants also do not contest venue under 28 U.S.C. § 1391, as Plaintiffs and

12  the recordings at issue are local to Los Angeles, and the suit is against the United

13  States and its officers.  In *New York Times*, the district court recognized that the

14  newspaper's choice of forum where it was located, in New York, was "entitled to

15  substantial deference" even though the action involved a challenge to subpoenas

16  emanating from Chicago.  392 F.Supp.2d at 480.

17  **C. This Action Is Ripe**

18  Defendants also do not dispute that this case is ripe for review even though the

19  threatened subpoena has not yet issued.  A "case is ripe" when "the threat of

20  enforcement" contrary to First Amendment interests is "'sufficiently imminent.'"

21  *Susan B. Anthony List*, 134 S.Ct. at 2342.  A prosecutor's "genuine threat" that would

22

23      [1] This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§
24  1346(a)(2), 1361 and 1651(a), and 5 U.S.C. § 702, as discussed in more detail in
    Section IV.B, *infra*.

25      [2] *But cf. id.* at 757-759 (ultimately rejecting claim on abstention grounds
    because of the unique need for the military to adjudicate an active duty serviceman's
26  (rather than a civilian's) claims, as discussed and distinguished further, *infra*).

27      [3] The Second Circuit overruled the district court's decision on other grounds,
    *New York Times Co. v. Gonzales*, 459 F.3d 160 (2d Cir. 2006), but affirmed that the
    district court had subject matter jurisdiction, *id.* at 167.

28

-4-

impact First Amendment rights is sufficient to trigger judicial review as the Ninth Circuit "do[es] not require in the context of First Amendment cases that the plaintiff risk prosecution by failing to comply with" the law; "[r]ather, [the Ninth Circuit] seeks to encourage plaintiff's 'commendable respect for the rule of law' by affording a pre-enforcement opportunity to test" the law.  *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 618-619 (9th Cir. 1999); *see also Wolfson v. Brammer*, 616 F.3d 1045, 1059-60 (9th Cir. 2010) ("[t]he Supreme Court has repeatedly pointed out the necessity of allowing pre-enforcement challenges to avoid the chilling" of First Amendment rights).

## III.    THIS COURT SHOULD NOT ABSTAIN; IT SHOULD PROTECT PLAINTIFFS' CONSTITUTIONAL RIGHTS HERE AND NOW

Defendants repeatedly and incorrectly assert that this Court is "required" to abstain.  *See, e.g.,* Opposition to Application ("Opp") at 1:12-14, 6:8-12, 6:15-17. "'Abstention is ... the exception and not the rule,' and it is ***strongly disfavored*** in First Amendment cases."  *Chula Vista Citizens*, 782 F.3d at 528 (emphasis added; quoting *City of Houston v. Hill*, 482 U.S. 451, 467 (1987)).  The Ninth Circuit warns that its "special concern with abstention in the First Amendment context arises in part from the fact that, in many cases, the delay that comes from abstention may itself chill the First Amendment rights at issue."  *Porter v. Jones*, 319 F.3d 483, 492-493 (9th Cir. 2003); *see also Zwickler v. Koota*, 389 U.S. 241, 252 (1967) (holding that to abstain and thus "force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional rights he seeks to protect").  No authority "requires" this Court to abstain, and it should not do so.

### A. This Court Has The Authority To Give Boal The Relief He Seeks

Where, as here, a federal court has subject matter jurisdiction, it may issue injunctive relief against federal officials in their official capacities to enjoin a violation of constitutional rights.  *See, e.g., United States v. Minor*, 228 F.3d 352,

356–57 (4th Cir. 2000) ("When constitutional interests are ... clearly implicated, federal courts have broad discretion to fashion a remedy in equity") (citing, *inter alia*, *Bell v. Hood*, 327 U.S. 678, 684 (1946) ("it is established practice ... to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution")); *R.I. Dept. of Env't Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002) ("our courts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringements of federal rights. Such actions are based on the grant of general federal-question jurisdiction under 28 U.S.C. § 1331 and the inherent equity powers of the federal courts") (internal citations omitted).  For example, in *Doe v. Harris*, 696 F.2d 109, 110-114 (D.C. Cir. 1992), then-Judge Ruth Bader Ginsburg, writing for the Court of Appeals, held that the plaintiff could proceed with an action for injunctive and declaratory relief to restrain, *inter alia*, federal prosecutors from issuing future subpoenas for his records from the Veterans Administration in alleged violation of his constitutional rights.

Consistent with their equitable powers, federal district courts may also enjoin the actions of federal officers in Article I courts, such as courts-martial.  *See, e.g., McDonough v. Widnall*, 891 F.Supp. 1439 (D. Col. 1995); *Detroit Free Press v. Ashcroft*, 195 F.Supp.2d 937 (E.D. Mich. 2002).  In *McDonough*, the federal district court held that it had the "clear equitable jurisdiction" to enjoin Air Force prosecutors from using, in a court-martial, information obtained via subpoenas to third parties, even though such an injunction could "have collateral consequences" in the court-martial itself.  *Id.* at 1444, 1447.[4]  In *Detroit Free Press*, a federal district court

_____

[4] Although the *McDonough* court held it was "clear" that it had the power to issue an injunction against the Air Force prosecutors, it declined to do so on prudential mootness grounds because the underlying court-martial proceedings were dismissed, the Air Force had already agreed to the "very relief" sought by the plaintiff and the Air Force was in the process of a "widespread" policy change as a result of the improper way it treated the plaintiff.  *Id.* at 1449-1450.

1   enjoined, on First Amendment grounds, the Attorney General and two immigration

2   judges from continuing a practice of closing Article I immigration courts in "special

3   interest cases" to the press and public.  195 F.Supp.2d at 940-941, *aff'd* 303 F.3d 681,

4   685 (6th Cir. 2002).[5]

5       **B. The *Councilman* Abstention Doctrine Does Not Apply Because Boal Is**

6          **A Civilian With Constitutional Claims, And It Would Be "Especially**

7             **Unfair" To Require Him To Exhaust His Remedies In Military Court**

8        Defendants rely heavily on *Schlesinger v. Councilman*, 420 U.S. 738 (1975)

9   (*Councilman*), but that case is inapposite.  In *Councilman*, a member of the military,

10  who was being court-martialed, asked a federal district court to enjoin the entire

11  court-martial proceedings against him.  *Id.* at 741-742.  Here, Boal is a third-party

12  civilian, he is not being court-martialed and he is not seeking to enjoin the military

13  court itself or the entire court-martial proceeding against Sgt. Bergdahl.  These are

14  critical distinctions – as the United States Supreme Court has recognized.  *See*

15  *Hamdan v. Rumsfeld*, 548 U.S. 557, 586-587 (2006) (refusing to abstain and holding

16  that *Councilman*'s "consideration for comity" for military discipline did not apply

17  where plaintiff was not a member of the Armed Forces).

18       The *Councilman* court emphasized that its abstention was rooted in the fact that

19  "[t]he military is 'a specialized society separate from civilian society' with 'laws and

20  traditions of its own,'" "founded on unique military exigencies as powerful now as in

21  the past," where "the military must insist upon a respect for duty and a discipline

22  without counterpart in civilian life."  *Id.* at 757.[6]  The Court further emphasized that

23

24       [5] Courts-martial are, like immigration courts, Article I courts.  *See id.*; U.S.
     Const., art. I, § 8.  As explained in greater detail in Section IV.C, *infra*, Plaintiffs
25   have not sued, and do not seek to have this Court enjoin, the military court itself; but,
     rather, the military prosecutor responsible for the threatened subpoena and his
26   superiors.

27       [6] Defendants' citations reinforce this point.  *See, e.g.,* Opp. at 2:7-9 (quoting
     *Chappell v. Wallace*, 462 U.S. 296, 302 (1983), for the proposition that military
28   courts are designed to "regulate military life").

1    "Councilman was on active duty when the charges against him were brought," and

2    there was "no question that he [was] subject to military authority and in proper cases

3    to disciplinary sanctions through the military justice system." *Id.* at 759.  The Court's

4    abstention depended on the fact that "a serviceman [was] charged with crimes by

5    military authorities." *Id.* at 758.[7]

6         The *Councilman* court distinguished several cases where, as here, ***civilians***

7    properly brought constitutional challenges in federal district court before exhausting

8    remedies in the military judicial system.  *Id.* at 758-759 (citing *Toth v. Quarles*, 350

9    U.S. 11 (1955), *Reid v. Covert*, 354 U.S. 1 (1957), *McElroy v. United States ex rel.*

10   *Guagliardo*, 361 U.S. 281 (1960) and *Noyd v. Bond*, 395 U.S. 683, 696 n. 8 (1969)).

11   "In each of those cases, the disruption caused to petitioners' civilian lives and the

12   accompanying deprivation of liberty made it '***especially unfair*** to require

13   exhaustion,'" as the "constitutional question presented turned on the status of the

14   persons as to whom the military asserted its power." *Id.* (emphasis added; citing

15   *Noyd*, 395 U.S. at 696 n. 8); *see also Singh v. Carter*, 2016 WL 837924, at *8

16   (D.D.C. Mar. 3, 2016) (rejecting government's "position that the plaintiff is required

17   to exhaust administrative remedies in a court-martial proceeding before bringing his

18   constitutional … claims before" federal district court).  Not all military subpoenas to

19   civilians implicate constitutional concerns, but this one does and it deserves this

20   Court's special attention.

21        Defendants claim *Noyd* (and, by extension, *Toth, Reid* and *McElroy*) involved

22   only jurisdictional challenges.  Opp. at 8:8-15.  But, *Councilman* instructs that those

23   cases "concerned ***not only*** the military court's jurisdiction, but ***also*** whether under

24   Art. I [of the U.S. Constitution] Congress could allow the military to interfere with

25

26        [7] Defendants' reliance on *Alli v. United States*, 2016 WL 1322427 (D. Md.
     Apr. 1, 2016), *see* Opp. at 15:15-16:2, is similarly misplaced because that case
27   involved a *service-member* seeking to quash a subpoena in his own court-martial, and
     a specific statute (not at issue here) that militated against the court accepting
28   jurisdiction.

the liberty of civilians even for the limited purpose of forcing them to answer to the military justice system" at all.  420 U.S. at 759 (emphasis added).[8]  Defendants do not cite a single case where an individual, non-party civilian (whether a reporter or otherwise) with constitutionally-based objections has had to respond to a military prosecutor's subpoena in a court-martial proceeding or else face federal prosecution and potential incarceration.

Boal is not in the military so the "unique military exigencies" attendant to military jurisprudence do not apply.  *Id.* at 757.  His constitutional challenges "turn" on his status as a civilian, and it would be "especially unfair" to require him to exhaust his remedies in military court.  *Id.* at 759.  This Court should not abstain; it should act to protect Mark Boal.[9]

The *Councilman* abstention doctrine, which at most only "normally weighs against intervention" where *active duty service-members* collaterally attack military proceedings brought against them, should not be applied for additional reasons.  *Id.* at 740, 757-759.  <u>First</u>, contrary to Defendants' contentions, Opp. 10:13-16, Boal articulated harms far beyond just cost and inconvenience, including harm to his First Amendment rights to gather and report newsworthy material and harm to his reputation as an independent and trustworthy reporter.[10]  *See* Boal Decl., ¶¶ 10-17;

_____

[8] Plaintiffs do not concede that a military court has jurisdiction over them or the recordings at issue.

[9] The *Younger* abstention doctrine also does not apply.  *See* Opp. at 9:2-19. The decision in *Younger v. Harris*, 401 U.S. 37, 43-44 (1971), is based on the concept of federalism and 28 U.S.C. § 2283, which ***expressly*** proscribes federal courts from enjoining proceedings in ***state*** courts except in unusual circumstances. Defendants cite no statute proscribing injunctions in courts-martial, and Plaintiffs are aware of none.  Moreover, *Younger* left open "unusual situations" where the need for "federal intervention" might arise, *id.* at 54, and Defendants concede that such a need is satisfied with a showing of irreparable injury, Opp. at 9:12-19, *Younger*, 401 U.S. at 43.  Here, a military prosecutor's threatened subpoena to a civilian reporter is highly unusual, and Plaintiffs show irreparable injury.  *See* Boal Decl., ¶¶ 10-17; Plaintiffs' Memorandum I/S/O Application ("Pltfs' Mem."), Dkt. No. 9-1, at 23:24-25:20.

[10] Even so, Defendants simply ignore Ninth Circuit authority establishing that the burden on a third party reporter's time and resources in responding to a subpoena should be considered.  *Shoen v. Shoen*, 5 F.3d 1289, 1295 (9th Cir. 1993) (*Shoen I*).

*see also* Pltfs' Mem. at 23:24-25:20 (articulating harm to Boal with citations to pertinent Circuit Court cases); Brief of *Amici Curiae*, Dkt. No. 20-1 (*Amici* Br.), at 15:23-20:22 (37 media organizations further explaining the irreparable harm to Boal from confronting a subpoena for his unpublished and confidential information). Defendants present zero evidence to the contrary, and no cases on point.

Second, despite Defendants' suggestion that a military court might someday "vindicate" Boal's constitutional rights, Opp. 12:2-3, that path is not remotely clear. As Defendants point out, the highest military court, the Court of Appeals for the Armed Forces (CAAF), left open the possibility of recognizing a reporter's privilege, but held in *United States v. Wuterich*, 67 M.J. 63, 79 (CAAF 2008), that it would "not decide here whether such a privilege should be recognized in the military justice system." On remand, the intermediate appellate court, the U.S. Navy-Marine Corps Court of Criminal Appeals, refused to recognize a constitutionally-based reporter's privilege in the context of a subpoena directed to CBS Broadcasting, Inc. (but not an individual journalist, such as Boal, who faces possible incarceration for refusal to comply with the subpoena under 10 U.S.C. § 847(b)). *United States v. Wuterich*, 68 M.J. 511, 516-517 (N-M Ct. Crim. App. 2009).[11]

Defendants do not cite a single case where an Army court-martial or the Army Criminal Court of Appeals has considered the reporter's privilege, and Plaintiffs are aware of no such case. That reinforces the Army courts-martial's lack of experience

And, in this case, they are very real. *See* Boal Decl., ¶ 16. Instead, Defendants cite inapposite cases holding that a *criminal defendant*'s claims of harm from cost and inconvenience "by themselves" are not irreparable. *See, e.g.,* Opp. 10:16-11:1 (quoting *Councilman*, 420 U.S. at 755, *Younger*, 401 U.S. at 46).

[11] In no event would the U.S. Navy-Marine Corps appellate court's ruling in *Wuterich* control in this matter because U.S. Army Sgt. Bergdahl's court-martial proceeding is in a different branch of service and *Wuterich* is not binding on this Court. *See United States v. Gutierrez*, 11 M.J. 122, 122-123 (CMA 1981) (service appellate decision "is controlling authority for all courts-martial **in that service**") (emphasis added); 10 U.S.C. § 866(a) (each JAG branch establishes its own Criminal Court of Appeals); *United States v. Shafer*, 384 F.Supp. 486, 487 (N.D. Ohio 1974) ("decisions of the United States Court of Military Appeals are in no way binding upon" federal district court).

REPLY I/S/O APPLICATION FOR TRO/OSC

with this important constitutional issue.

In contrast, the Ninth Circuit Court of Appeals repeatedly has recognized that the First Amendment-based reporter's privilege applies "in all judicial proceedings, *civil and criminal alike*."  *Shoen I*, 5 F.3d at 1292 (emphasis added); *see also Shoen v. Shoen,* 48 F.3d 412, 414 (9th Cir. 1995) (*Shoen II*) (reaffirming application of First Amendment-based privilege); *United States v. Pretzinger*, 542 F.2d 517, 520-521 (9th Cir. 1976) (affirming decision not to compel reporter to disclose source in criminal case); *Farr v. Pitchess*, 522 F.2d 464, 467-468 (9th Cir. 1975) (recognizing constitutionally-based reporter's privilege in criminal case).[12]

Boal's constitutional rights are already clear here, but they are painfully unclear in the military courts.  Defendants suggest that Boal would have the "opportunity" to petition the Army Court of Criminal Appeals, CAAF and the United States Supreme Court for "extraordinary relief" or *certiorari*.  Opp. at 13:7-14.  The Army Court of Criminal Appeals and CAAF, in their discretion, may choose not to entertain petitions for "extraordinary relief."  *See* Ct. Crim. App., Rule 2(b) ("[t]he Court may, in its discretion, entertain petitions for extraordinary relief …"); CAAF R. of Prac. & Proc., Rule 4(b) (same).  While Defendants argue Boal would have "at least the opportunity to petition" the military appellate courts for review under the All Writs Act, the Government also states that such review is discretionary and limited to "extraordinary relief," and Boal would have to show his right to relief is "'clear and indisputable.'"  Opp. at 13:7-14; *DB By and Through Johnson v. Lippert*, 2016 WL 381436, at **2-3 (Army Ct. Crim. App. Feb. 1, 2016) (evaluating request from third-party for review under standard for All Writs Act, 28 U.S.C. § 1651(a), since other

---

[12] Defendants raise unfounded doubts about whether there is a First Amendment-based reporter's privilege in the non-grand jury, criminal context.  *See* Opp. at 22 n. 23.  Contrary to Defendants' unsupported suggestion, there is no doubt that the Ninth Circuit and many other courts nationwide recognize a First Amendment-based reporter's privilege in the non-grand jury, criminal context.  *See* Section V.B & n.22, *infra*; *see also Shoen I*, 5 F.3d at 1292; *Shoen II,* 48 F.3d at 414; *Farr*, 522 F.2d at 467-468; Pltfs' Mem. at 9:10-11:5.

1   avenues for review – e.g., under 10 U.S.C. §§ 862, 866 – were inapplicable).  Given

2   the Army's inexperience with the reporter's privilege and the lack of a controlling

3   CAAF opinion, it would be very difficult to show such right to appellate relief in the

4   military system is "clear and indisputable."  By contrast, the Government – but not

5   Boal – would have a right to the interlocutory appeal of an adverse ruling from the

6   court-martial if the Government could show that the court-martial's ruling "excludes

7   evidence that is substantial proof of a fact material in the proceeding."  10 U.S.C. §

8   862(a)(1)(B); *Wuterich*, 68 M.J. at 512 (decided under government's right to

9   interlocutory review found in 10 U.S.C. § 862); *accord* 10 U.S.C. § 866(b)

10  (interlocutory review when requested by JAG – Boal's opposing party – which gets

11  to "establish" the Criminal Court of Appeals, 10 U.S.C. § 866(a)).  The right to

12  interlocutory review in the military court system is decidedly imbalanced against

13  Boal.[13]

14          Moreover, in the military system, Boal would not see a civilian judge, if ever,

15  until he reached CAAF, the military's highest court.  Opp. at 3:5-9.  For a civilian

16  like Boal, hoping for discretionary review in the military system – with no established

17  record of protecting reporters' constitutional rights – is not a substitute for the

18  constitutional expertise of this Article III Court now.  *See Free Enterprise Fund v.*

19  *Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 490-491 (2010) (holding it is not

20  a "'meaningful' avenue of relief" to "require plaintiffs to 'bet the farm ... by taking

21  the violative action' before 'testing the validity of the law,'" with their constitutional

22  claims).  If a military court declined to apply Ninth Circuit law, Boal would be

23

24  _____
25      [13] Defendants take the position that a petition for *certiorari* to the United States
    Supreme Court may only be granted under 28 U.S.C. § 1259 "[f]ollowing review by"
26  CAAF.  Opp. at 13:12-14.  This suggestion reinforces that the purported
    "opportunity" for such review is not meaningful because – setting aside the
27  prejudicial delay and ongoing harm to Boal's constitutional rights while such review
    is undertaken – it rests on the assumption that CAAF already will have exercised its
    discretion to entertain the case.  *See* 28 U.S.C. §§ 1259(3), (4).
28

-12-

**REPLY I/S/O APPLICATION FOR TRO/OSC**

stripped of constitutional rights that he has right now.[14]  In the months it would take for this case to return to this Court under 10 U.S.C. § 847, Boal will continue to suffer irreparable harm to his First Amendment rights.  Boal Decl., ¶¶ 10-17. This additional factor weighs against abstention, as Boal needs this Court to protect his rights here and now.

<u>Third</u>, this Court – rather than a military court – has the expertise to protect the constitutional rights of Boal, a civilian in its jurisdiction.  *See Chula Vista Citizens*, 782 F.3d at 528 ("'federal courts are particularly well-suited to hear'" First Amendment cases).  Congress vested its trust **only** in the United States district courts to try, convict and punish civilians for willfully neglecting or refusing to answer military subpoenas.  10 U.S.C. § 847(b) (10 U.S.C. § 847 applies to persons "not subject to this chapter" – *i.e.,* non-service-members).[15]  As Defendants note, the *Councilman* court "assumed that the military court system will vindicate **servicemen's** constitutional rights." 420 U.S. at 758 (emphasis added).[16]  But, that is a far cry from the suggestion that military courts are as expert – or have any expertise

---

[14] If this matter is ever before a military court, Plaintiffs reserve the right to argue that Ninth Circuit law still should apply.  *Accord Compuware Corp. v. Moody's Inv's Servs., Inc.*, 222 F.R.D. 124, 132-133 (E.D. Mich. 2004) (holding that New York's reporter's privilege law, rather than Michigan's, should apply because, *inter alia,* the parties claiming the privilege were based in New York and they "surely relied on the protections of New York law").

[15] *See also* Rules for Courts-Martial ("R.C.M.") 809, Discussion ("Persons not subject to military law … may be prosecuted in Federal civilian court under [10 U.S.C. § 847] for neglect or refusal … to produce evidence").  The pertinent R.C.M. are attached to this brief as Appendix A for the Court's ease of reference.

[16] While courts-martial may sometimes encounter Fourth, Fifth and Sixth Amendment challenges as they adjudicate criminal and disciplinary cases, that does not mean all aspects of the Constitution are familiar to courts-martial; and, in cases where the First Amendment is involved, norms and expectations in the military are markedly different than in civilian life.  *See Parker*, 417 U.S. at 758  ("While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections.  The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it.").

---

1    at all – in protecting the constitutional rights of civilians.  In *Noyd*, the Supreme

2    Court, collecting cases of civilians challenging the constitutionality of military court

3    actions, stated that it "did not believe that the expertise of military courts extended to

4    the consideration of constitutional claims of the type presented."  395 U.S. at 696 n.

5    8.  And, in *O'Callahan v. Parker*, 395 U.S. 258, 265 (1969), the Supreme Court

6    stated that "courts-martial as an institution are singularly inept in dealing with the

7    nice subleties of constitutional law."  *Overruled on other grounds by Solorio v.*

8    *United States*, 483 U.S. 435 (1987).

9          This Court is better equipped to apply the Ninth Circuit's reporter's privilege,

10   *see* Pltf's Mem. at 9:8-17:2, than a military court that almost certainly has zero

11   experience with the issue given the unprecedented nature of the Army prosecutor's

12   threatened subpoena.  *See, e.g., Pretzinger*, 542 F.2d at 520-521 (evaluating

13   reporter's privilege in criminal case); *Farr*, 522 F.2d at 467-468 (same).  And,

14   contrary to Defendants' contentions, Opp. at 14:6-15:2, this Court is well-equipped to

15   understand the elements of Sgt. Bergdahl's alleged crimes and attendant issues of

16   intent and any evidence thereof as it does so on a regular basis in countless other

17   types of criminal cases.  *See generally Dickey v. United States*, 404 F.2d 882, 883

18   (5th Cir. 1968) (holding evidence was sufficient for federal court jury to conclude

19   that sailor had requisite intent to be considered a deserter); *Bigrow v Hiatt*, 70

20   F.Supp. 826, 828, 832-833 (M.D. Pa. 1947) (evaluating sufficiency of proof of

21   misbehavior in the presence of the enemy), *aff'd,* 168 F.2d 992 (3d Cir. 1948).

22         Abstention serves no purpose when the ultimate decision over the legitimacy of

23   Boal's assertion of a constitutionally-based privilege is subject to final determination

24   by not just any Article III court, but the very court whose protection he is now

25   seeking.  *See* 10 U.S.C. § 847(b).  Where, as here, a federal district court has

26   jurisdiction, the United States Supreme Court has forcefully and repeatedly made

27   clear that the federal court should not decline to hear the case: "a federal court's

28   obligation to hear and decide cases within its jurisdiction is virtually unflagging."

-14-

1   *Susan B. Anthony List*, 134 S.Ct. at 2347 (internal quotation marks omitted).[17]  Thus,

2   even if the *Councilman* abstention doctrine were to apply to a civilian raising

3   constitutional challenges (which it does not), the three *Councilman* "factors" laid out

4   by Defendants, Opp. at 9:21-10:10, still weigh against abstention, as does the

5   "unflagging" "obligation" for this Court to hear this case, *Susan B. Anthony List*, 134

6   S.Ct. at 2347; *Lexmark,* 134 S.Ct. at 1386.

7   **IV.   DEFENDANTS ARE NOT ENTITLED TO SOVEREIGN IMMUNITY**

8          **A.   It Is Well-Established That Federal Officers Can Be Enjoined To**

9                **Prevent Ongoing And Future Infringements Of Federal Rights**

10          In *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704 (1949),

11   the Supreme Court made clear that there is an exception to the sovereign immunity of

12   federal officers for suits to stop the alleged infringements of constitutional rights:

13   "Under our constitutional system, certain rights are protected against governmental

14   action and, if such rights are infringed by the actions of officers of the Government, it

15   is proper that the courts have the power to grant relief against those actions."

16          Indeed, courts have long held that federal officers may be sued for equitable

17   relief to prevent infringements of federal rights:

18          As a general matter, there is no statute expressly creating a cause of

19          action against federal officers for constitutional or federal statutory

20          violations. *But cf.* 42 U.S.C. § 1983 (providing a statutory cause of

21          action for deprivations of federal rights against officials acting under

22          color of state law). Nevertheless, ***our courts have long recognized***

23          ***that federal officers may be sued in their official capacity for***

24          ***prospective injunctive relief to prevent ongoing or future***

25          ***infringements of federal rights.***  *See Schneider v. Smith*, 390 U.S. 17,

26   _____

27   [17] *See also Lexmark, Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct.
     1377, 1386 (2014) (same); *Sprint Communications, Inc. v. Jacobs*, 134 S.Ct. 584, 591
     (2013) (same).

28

-15-

**REPLY I/S/O APPLICATION FOR TRO/OSC**

88 S.Ct. 682, 19 L.Ed.2d 799 (1968); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Philadelphia Co. v. Stimson*, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570 (1912); *see generally* Erwin Chemerinsky, Federal Jurisdiction § 9.2.2 (3d ed. 1999). Such actions are based on the grant of general federal-question jurisdiction under 28 U.S.C. § 1331 and the inherent equity powers of the federal courts.

*R.I. Dept. of Envt'l Mgmt.*, 304 F.3d at 41 (emphasis added); *see also Bell v. Hood*, 327 U.S. 678, 684 (1946) (in a case against FBI agents, recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"); *Doe*, 696 F.2d at 110-114 (holding that suit for injunctive relief against federal prosecutors, *inter alia*, to prevent future subpoenas could proceed); *McDonough*, 891 F.Supp. at 1447 (holding that district court had authority to enjoin military prosecutors from using subpoenaed information in court-martial). Consistent with these authorities, federal officers acting in a manner contrary to constitutional limits are not entitled to sovereign immunity. *See, e.g., Tashima v. Admin. Office of the U.S. Courts*, 719 F. Supp. 881, 887 (C.D. Cal. 1989) (holding that federal officers acting "in a manner infringing constitutional limits" have "no immunity"), *aff'd*, 967 F.2d 1264, 1270-1271 (9th Cir. 1992). Defendants contend that cases such as *Tashima* should not apply because they would supposedly work an "intolerable burden" on the Government, but they fail to articulate any such burden, they do not present any evidence of burden, nor do they demonstrate how the purported burden would be more significant than that imposed on Mark Boal and the public. *Compare* Opp. at 20:3-23 *with* Section V.C, *infra*; Pltfs' Mem. at pp. 23-25; Boal Decl., ¶¶ 10-17; *Amici Curiae* Br. at 15-20.

Despite the foregoing abundant authority holding that federal courts have the inherent equitable power to restrain federal officers such as Defendants from violating Boal's constitutional rights, Defendants assert that they enjoy sovereign

immunity and may therefore infringe Boal's rights with impunity.  Defendants'

assertions do not find support in law or equity.  If Defendants' sovereign immunity

argument were the law, federal courts would be powerless to enjoin federal officers

from seizing newspaper printing presses in violation of the First, Fourth and Fifth

Amendments, or to stop stationing troops in people's homes in violation of the Third,

Fourth and Fifth Amendments.  Defendants' position is not – and cannot be – the law.

### B.      Sovereign Immunity Is Waived By 5 U.S.C. § 702

In addition to this Court's inherent equitable power to prevent ongoing or

future infringements of federal rights, a specific statute provides that a federal court

may grant equitable relief against the United States or "an agency" of the United

States "or an officer or employee thereof" for acting or failing to act "in an official

capacity."  5 U.S.C. § 702 ("Section 702" of the Administrative Procedures Act (the

"APA")).  Defendants concede – as they must – that Section 702 is a waiver of

sovereign immunity.  Opp. at 17:1-2.  In *The Presbyterian Church (U.S.A.) v. U.S.*,

870 F.2d 518, 525 (9th Cir. 1989), the Ninth Circuit held that, "[o]n its face, [Section

702] is an ***unqualified*** waiver of sovereign immunity in actions seeking nonmonetary

relief against legal wrongs for which governmental agencies are accountable")

(emphasis added and applying waiver to First Amendment claim).

### C.   No Exception To Section 702's Waiver Of Sovereign Immunity Applies Because, *Inter Alia*, Plaintiffs' Claims Are Against Federal Officers, And *Not* Against The Court-Martial (*i.e.,* Not The Court) Itself

Defendants claim that an exception to Section 702 applies under the APA

because the term "agency" excludes "courts martial".  Opp. at 17:12-14 (citing 5

U.S.C. § 701(b)(1)(F)).  Defendants have the burden to demonstrate with "clear and

convincing" evidence that Congress intended an exception to restrict access to the

federal courts in a case like this one.  *Bowen v. Michigan Academy of Family

Physicians*, 476 U.S. 667, 671 (1986).  Moreover, the Supreme Court has made clear

that plaintiffs bringing constitutionally-based claims must be permitted to proceed

-17-

even if there is some question as to whether Section 702 applies. *Webster v. Doe*, 486 U.S. 592, 603 (1988). In *Webster*, the Supreme Court held in the context of a claimed exemption to the APA that, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear[.]" *Id.*

Defendants cannot satisfy their burdens and their argument for an exception fails for several reasons. <u>First</u>, Section 702 "waives sovereign immunity regardless of whether the claims arise from 'agency action' as defined by the APA." *Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 867 (9th Cir. 2011) (*Shinseki*), *vacated en banc on other grounds*, 678 F.3d 1013 (9th Cir. 2012).

<u>Second</u>, Section 702's waiver of sovereign immunity applies more broadly than to the APA itself. *See Presbyterian Church*, 870 F.2d at 525 (Section 702's waiver is "unqualified"). The Ninth Circuit further explained that "because [plaintiffs] have brought '[a]n action in a court of the United States seeking relief other than money damages' that arises under the Constitution itself, as in *Presbyterian Church*, we find that sovereign immunity has been waived by § 702's second sentence," and "[Section 702]'s waiver of sovereign immunity applies more broadly than to actions under the APA itself." *Shinseki*, 644 F.3d at 867.[18] Thus, even if Plaintiffs' suit were only founded on the APA, which it is not, Section 702's waiver of immunity still applies.

<u>Third</u>, Plaintiffs are not suing – and do not seek to enjoin – the court-martial (*i.e.*, the court); instead, Plaintiffs are suing and seeking to enjoin the military prosecutor and those in the chain of command above him.

Plaintiffs' action here certainly is ***not*** – as Defendants put it – "essentially

---

[18] Other Circuit Courts agree. *See, e.g., Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (Section 702 "waiver is not limited to suits under the" APA); *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996) ("[t]he APA's waiver of sovereign immunity applies to any suit whether under the APA or not"); *United States v. Murdock Mach. & Engr. Co.*, 81 F.3d 922, 930 n. 8 (10th Cir. 1996) (describing Section 702 as "a general waiver of the government's sovereign immunity from injunctive relief").

against the court-martial."  Opp. at 18:10.  The Rules for Courts-Martial define a

"court-martial," "depending on the context," as "the military judge and members of a

general or special court-martial" – *i.e.*, the judge and jury in a general court-martial

proceeding.  R.C.M. 103(8).[19]  In this context, Sgt. Bergdahl was referred to a general

court-martial.  Oshana Decl., ¶ 6.  Subpoenas to civilians in general courts-martial –

such as the one in this case – do not issue from the military judge or jury or defense

counsel; rather, they issue *only* from the "trial counsel" (*i.e.*, the military prosecutor,

*see* 10 U.S.C. § 38(a)) with the President's imprimatur.  R.C.M. 703(e)(2)(C);

Complaint, Ex. A.[20]  The "court-martial" (*i.e.* the judge and jury), which is a specific

and defined term under R.C.M. 103(8), is not a defendant in this action, and – like

any court in America – the actual "court-martial" body operates separately from the

prosecution.  *See Cothran v. Dalton*, 83 F.Supp.2d 58, 70 (D.D.C. 1999) (recognizing

the distinction to be made between a claim against a Judge Advocate General (JAG)

"officer" (such as Maj. Oshana) and "the court-martial body" itself).[21]

 Here, Section 702 clearly waives sovereign immunity, and, because Plaintiffs

have not sued and do not seek to enjoin the court-martial itself, the exemption under 5

---

[19] The "military judge" "means the military judge detailed to the court-martial to which charges in a case have been referred for trial," and the "members of a court-martial are the voting members detailed by the convening authority" (*i.e.*, the jury). R.C.M. 103(14), (15).

[20] *See also United States v. Rodriguez*, 60 M.J. 239, 246 (CAAF 2004) (citing R.C.M. 703(c)(1), "[t]he *Government* is obligated to produce by compulsory process evidence requested by the defense that is 'relevant and necessary'") (emphasis added). Pursuant to 10 U.S.C. § 846(a), "counsel for the Government" "counsel for the accused," and, separately, "the court-martial," are entitled to "obtain" "evidence in accordance with such regulations as the President may prescribe." If there is evidence that "is of such importance that it is essential to a fair trial" and "there is no adequate substitute for such evidence," and such evidence is *not* subpoenaed by the trial counsel (*i.e.*, the prosecutor) pursuant to R.C.M. 703(e)(2)(C), then "the military judge shall grant a continuance … or shall abate the proceedings" until the prosecutor issues such subpoena, R.C.M. 703(f)(2).

[21] By analogy, the APA also does not apply to the federal courts. 5 U.S.C. § 701(b)(1)(B), and a U.S. Attorney is not an agent of a federal court. Thus, there may be no provision for one federal court to enjoin another federal court, but then-Judge Ruth Bader Ginsburg held it is possible for a federal court to restrain a federal prosecutor from issuing subpoenas. *See Doe*, 696 F.2d at 110-114.

---

**REPLY I/S/O APPLICATION FOR TRO/OSC**

1  U.S.C. § 701(b)(1)(F) does not apply.  Defendants have raised no evidence – let alone

2  clear and convincing evidence – to the contrary.  *Bowen*, 476 U.S. at 671.  Even if

3  there were some doubt – and there should be none – Plaintiffs' claims are

4  constitutionally-based and should proceed in this Court.  *Webster*, 486 U.S. at 603.

5  **V.    PLAINTIFFS HAVE MADE THEIR SHOWING FOR A TEMPORARY**

6  **RESTRAINING ORDER OR OTHER INJUNCTIVE RELIEF**

7       The Ninth Circuit's approach to temporary restraining orders and preliminary

8  injunctions involves a balancing of four factors.  *Leiva-Perez v. Holder*, 640 F.3d

9  962, 966 (9th Cir. 2011).  Plaintiffs made ample showing on all four factors.  *See*

10 Pltfs' Mem. at pp. 8-25.

11      **A.    Unrebutted Law And Evidence Demonstrate Irreparable Harm**

12      Defendants have no answer to *Elrod*, 427 U.S. at 373, where the Supreme

13 Court held that "[t]he loss off First Amendment freedoms, for even minimal periods

14 of time, unquestionably constitutes irreparable injury."  *See also* Pltfs' Mem. at 24:2-

15 11; *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (a "colorable First

16 Amendment claim" is "irreparable injury sufficient to merit the grant of relief");

17 *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989) ("even minimal infringement

18 upon First Amendment values constitutes irreparable injury sufficient to justify

19 injunctive relief").  Defendants' only response to Plaintiffs' harm is to suggest that

20 Boal only claimed cost and inconvenience.  Opp. at 10:11-11:16, 25:3-5.  However,

21 as explained in Section III.B, *supra*, Boal articulated harms far beyond just cost and

22 inconvenience, including irreparable harm to his First Amendment rights and his

23 reputation as a reporter.  *See* Boal Decl., ¶¶ 10-17; *see also* Pltfs' Mem. at 23:24-

24 25:20; *Amici* Br. at 15:23-20:22.  Defendants advance no evidence or authority to the

25 contrary.

26      As a civilian, the prospect of Boal seeking discretionary review in the military

27 appellate court system, in the hope that those courts *might* take Boal's case and *might*

28 recognize constitutional rights that are already well-established here, is no substitute

1  for prompt protection from this Court.  *Free Enterprise Fund*, 561 U.S. at 490-491.

2  **B.  Defendants Do Not Defend The Indefensible Subpoena, And Plaintiffs**

3  **Are Likely To Succeed On The Merits**

4  A "'likelihood' of success per se is not an absolute requirement," for injunctive

5  relief, *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014);

6  nevertheless, it is easily satisfied here.  Defendants do not address the large body of

7  case law cited by Plaintiffs, including from the Ninth Circuit, holding that reporters

8  have a qualified First Amendment privilege in the non-grand jury, criminal context to

9  withhold unpublished materials.  *See* Pltfs' Mem. at 9:10-12:20.[22]  Nor do

10  Defendants dispute that Mark Boal is entitled to those First Amendment protections.

11  [22] The reporter's privilege is treated differently in grand jury cases versus non-grand jury, criminal cases.  *See* Pltfs' Mem. at 10 & n. 4.  Footnote 23 of Defendants' Opposition misunderstands the reporter's privilege in the Ninth Circuit.  Opp. at 22 n. 23.  Other than *Farr*, where the constitutionally-based qualified privilege was recognized in a criminal case but overcome, 522 F.2d at 467-468, all of the reporter's privilege cases cited in Defendants' footnote 23 are in the grand jury context.  *See In re Grand Jury Proceedings (Scarce)*, 5 F.3d 397, 402 (9th Cir. 1993) (distinguishing *Farr* and noting that the *Farr* court "balanced the conflicting interests raised by that case where the societal interest was different in order to determine the existence of a privilege, but did so **only because** that case – unlike *Branzburg [v. Hayes*, 408 U.S. 665 (1972)] or the present case –did not involve testimony before a grand jury") (emphasis added); *In re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111, 1115 (N.D. Cal. 2006) (recognizing First Amendment privilege in other criminal contexts, but rejecting application where grand jury was involved).  The same was true in *In re Grand Jury Subpoena, Judith Miller*, 488 F.3d 1141, 1144 (D.C. Cir. 2006).  The disparate treatment of grand jury cases stems from the facts of *Branzburg*, where reporters were called to testify before grand juries about their **eyewitness observations** of criminal activity, 408 U.S. at 692, which is not remotely the case here.  *See also Farr*, 522 F.2d at 468 (Ninth Circuit holding that "[t]he application of the *Branzburg* holding to **non-grand jury** cases" requires balancing of the First Amendment privilege against competing interests) (emphasis added); *Riley v. Chester*, 612 F.2d 708, 714 716 (3d Cir. 1979) (recognizing reporter's privilege grounded in First Amendment and noting limitation of *Branzburg* to "case where the reporter witnessed events which are the subject of grand jury investigations").  Although the reporters in *Branzburg* were compelled to testify before those grand juries, a majority of the *Branzburg* court still recognized First Amendment protections for reporters in grand jury and other contexts.  408 U.S. at 681; *id.* at 710 (Powell, J., concurring).

The threatened subpoena in this case does not involve a grand jury so the grand jury cases cited by Defendants are inapposite.  It is telling that Defendants ignore **all** of the **non**-grand jury cases cited by Plaintiffs where a First-Amendment based privilege is clearly recognized in the Ninth Circuit and elsewhere nationwide.  *Compare* Pltfs' Mem. at 9:10-11:5 *with* Opp. at 22 n. 23.

**REPLY I/S/O APPLICATION FOR TRO/OSC**

1    *Id.* at 11:6-12:9; *see also Amici* Br. at 8:10-15:21.

2         Aside from a passing, conclusory remark by Maj. Oshana that the recordings

3    are supposedly relevant, Oshana Decl., ¶ 10, Defendants make no effort at all to

4    defend the threatened subpoena.[23]  They do not articulate its "clear relevance" to any

5    issue.  *Shoen II*, 48 F.3d at 416.  Nor do they explain how they have exhausted all

6    alternative sources, or how the requested recordings would be anything but

7    cumulative given the "300-plus pages of sworn testimony" from Sgt. Bergdahl, his

8    debriefings over three weeks and the 1,500,000 pages of documents produced in

9    discovery from 28 agencies.  *Id.*; Jassy Decl., Exs. B, C; *see also* Pltfs' Mem. at

10   14:13-15:8.  Maj. Oshana avers that two investigations "concluded" that Sgt.

11   Bergdahl "deserted his post."  Oshana Decl., ¶ 4.  If that point is certain, then the

12   recordings at issue are surely cumulative.  Defendants also make zero effort to

13   explain how the subpoena can overcome common law protections for reporters or

14   even the most basic standards for subpoenas in federal criminal cases or courts-

15   martial.  *See* Pltfs' Mem. at 17:3-23:7.

16        Rather than make any effort to defend the indefensible subpoena, Defendants

17   only point back to their unavailing abstention and sovereign immunity arguments and

18   insist that the President "generally" cannot be enjoined.  Opp. at 23:22-25:2.[24]

19   _____

20   [23] This conclusory assertion of relevance is difficult to understand because Maj.
     Oshana has not yet listened to the unedited recordings at issue.  Major Oshana's
21   declaration does not offer any detail as to what he imagines could be relevant in the
     recordings, and does not attempt to explain or defend the obscure points he
22   referenced to Plaintiffs' counsel that he hoped might impeach Sgt. Bergdahl.  Jassy
     Decl., ¶ 4.  In any event, a pre-trial subpoena to a non-party in a criminal case may
23   not be used to gather evidence simply for possible impeachment.  *United States v.
     Fields*, 663 F.2d 880, 881 (9th Cir. 1981).

24   [24] The President is named in this action because the draft subpoena is in his
     name and under his authority.  Complaint, ¶ 10, Ex. A.  Plaintiffs would not object if
25   the President were not included in this Court's temporary restraining order or
     preliminary injunction to restrain issuance or enforcement of the subpoena, without
26   prejudice to an application to include the President in the highly unlikely event that
     he signs the subpoena himself.  *See Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir.
27   1996) (courts have "bypassed" the immunity of the President where plaintiff's injury
     "can be redressed by injunctive relief against subordinate officials").

28

-22-

**C. The Balance Of Equities And Public Interest Favor Plaintiffs**

Case after case from courts all around the country extol the benefits of a vigorous and independent press that investigates, gathers and publishes newsworthy information, and express grave concern with efforts to undermine a free press. *See* Pltfs' Mem. at 9:8-21:5, 23:8-23; *see also Amici* Br. at 4:15-8:9; Boal Decl., ¶¶ 2-17.

The Ninth Circuit articulates the importance of safeguarding the reporter's privilege: "Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest 'of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice.'" *Shoen I*, 5 F.3d at 1292. The Second Circuit recognizes the "paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters." *Baker v. F&F Investment*, 470 F.2d 778, 782 (2d Cir. 1972).

A vigorous and independent press, relying on confidential sources, uncovered and reported on the Watergate scandal and abuses at Abu Ghraib prison in Iraq. *New York Times*, 382 F.Supp.2d at 498. The work of journalists has "sparked investigations into organized crime, environmental and safety hazards related to nuclear power plants, and financial misconduct by elected officials[.]" *Id.* (citations omitted). Boal's recorded interviews at issue here are with Sgt. Bergdahl, one of the most controversial figures in America's 13-year military engagement in Afghanistan, a man at the center of intense governmental and public scrutiny. Investigative journalism concerning how and why our nation is conducting wars, and the impact of those wars on service-members, remains at the highest levels of public concern.

These important values are juxtaposed against the harm of subpoenas to journalists, as articulated by the Ninth Circuit:

> The ... four interests named are the threat of administrative and
> judicial intrusion into the newsgathering and editorial process; the

-23-

1   disadvantage of a journalist appearing to be an investigative arm of
2   the judicial system or a research tool of government or of a private
3   party; the disincentive to compile and preserve non-broadcast
4   material; and the burden on journalists' time and resources in
5   responding to subpoenas.
6   *Shoen I*, 5 F.3d at 1294-95.  Compelled disclosure of unpublished material
7   "'convert[s] the press in the public's mind into an investigative arm of prosecutors
8   and the courts,'" and causes reporters to "'be shunned by persons who might
9   otherwise give them information without a promise of confidentiality, barred from
10  meeting which they would otherwise by free to attend and to describe, or even
11  physically harassed if, for example, taking notes or photographs at a public rally.'"
12  *Id.* at 1295; *see also* Boal Decl., ¶¶ 10-17.
13          This harm is compounded where, as here, a reporter is asked to breach a
14  promise of confidentiality: "Compelling a reporter to disclose the identity of a source
15  may significantly interfere with this news gathering ability; journalists frequently
16  depend on informants to gather news, and confidentiality is often essential to
17  establishing a relationship with an informant."  *Zerilli v. Smith*, 656 F.2d 705, 711
18  (D.C. Cir. 1981).  The public interest and the balance of equities tip sharply in favor
19  of injunctive relief.
20          For the final two factors – the balance of equities and public interest –
21  Defendants only briefly point back to their unavailing *Councilman* abstention
22  argument.  Opp. at 25:5-11.  They do not explain how the public would benefit from
23  having a military prosecutor subpoena a civilian reporter, nor do they explain how the
24  public would benefit from having that civilian struggle his way through the military
25  court system where his constitutional rights are uncertain to be recognized.
26  Defendants elsewhere claim, without any detail or evidence, that it would supposedly
27  be an "intolerable burden" to have their exceedingly broad subpoena enjoined.  Opp.
28  at 20:3-23.  Whatever unarticulated burdens might supposedly befall Defendants,

-24-

they are outweighed by the further (and unrebutted) irreparable harm Mark Boal and the public will suffer if this Court does not grant the requested relief.

## VI.    CONCLUSION

For the foregoing reasons and for the reasons stated in Plaintiffs' opening papers, Plaintiffs respectfully request that the Court grant their Application in full and grant whatever further relief the Court deems just and proper.


Dated:  August 15, 2016              JASSY VICK CAROLAN LLP

                                     By _____/s/ Jean-Paul Jassy_____
                                           JEAN-PAUL JASSY

                                     COLBY C. VOKEY, LtCol USMC (Ret.)

                                     Attorneys for Plaintiffs
                                     MARK BOAL
                                     and FLAKJACKET LLC d/b/a PAGE 1